## BARNARD & CO., *Appellant*, v. KNOX COUNTY.

### DIVISION ONE.

1. **Constitution**: COUNTY REVENUE: LIMITATION OF TAXATION. A county court cannot levy a tax in excess of the rate of fifty cents on the hundred dollars, provided in the constitution (art. 10, sec. 11) except, with the assent of the voters, for the purpose of erecting a courthouse or jail, or for paying an indebtedness existing at the adoption of the constitution.

2. —— : —— : COUNTY CONTRACTS. Said limitation, as well as that contained in section 12, article 10, of the constitution, prohibiting a county from incurring indebtedness "exceeding in any one year the income and revenue provided for such year," includes indebtedness created in any manner, or for any purpose, and no distinction exists between debts created by county courts, and debts created by law, *e. g.*, by the county clerk for books and stationery necessary for his office. (*Potter v. Douglas Co.*, 87 Mo. 230, *distinguished and overruled.*)

3. —— : LIMITATIONS : NOTICE. It is the duty of persons dealing with counties and county officers, as well of the latter, to take notice of the limitations on taxation prescribed by the constitution.

*Appeal from Knox Circuit Court.*—HON. B. E. TURNER, Judge.

AFFIRMED.

*H. M. Pollard* for appellant.

The trial court erred in finding for the defendant. The debt sued for was created by law and not by the action of the county court, and the limitations in the constitution do not apply. *Potter v. Douglas Co.*, 87 Mo. 239 ; *Rollins v. Lake Co.*, 34 Fed. Rep. 845; Dillon on Mun. Corp., sec. 137 ; *Butz v. Muscatine*, 8 Wall. 581 ; *Barnard v. Knox Co.*, 37 Fed. Rep. 563.

*Charles D. Stewart* and *William Clancy* for respondent.

(1) The limitations in sections 11 and 12, of article 10, of the constitution of 1875, went into effect on the thirtieth of November, 1875, and were self-enforcing, and do not require legislation to make them effective. *State ex rel. v. Van Every*, 75 Mo. 537 ; *St. Joseph v. Patten*, 62 Mo. 444, 450. " A constitution is not to be made to mean one thing at one time and another at some subsequent time, when the circumstances may have so changed, as perhaps to make a different rule in the case seem desirable. What [a court is to do is to declare the law as written, leaving it to the people themselves to make such changes as new circumstances may require." Cooley on Const. Lim. [ 4 Ed.] 67, and cases cited. ( 2 ) " A county cannot levy taxes to pay judgments against it, founded on warrants issued since the adoption of the present constitution, to meet current expenses incurred since said adoption, where such levy is in excess of the rate prescribed for county purposes in article 10, section 11, of said constitution." *Arnold v. Hawkins*, 95 Mo. 569 ; *Black v. McGonigle*, 103 Mo. 192. ( 3 ) The distinction sought to be made between debts created by statute, and those created by the county court, is clearly untenable. The warrant

drawn in this case was for the current running expenses of
the county, and its issuance was in violation of the con-
stitution. (4) " What a court is to do is to declare
the law as written, leaving it to the people themselves
to make such changes as new circumstances may
require." Cooley on Const. Lim., *supra; Black v.
McGonigle, supra.*

BLACK, J.—This is a suit upon a duly protested
warrant issued by the county court of Knox county, to
George D. Barnard, dated the seventh day of May,
1885, for $83.90, payable " out of any money in the treas-
ury appropriated for the contingent fund." Barnard
assigned the warrant to the plaintiff corporation.

The defense is that the debt, for which the warrant
was issued, was created after the county court had
issued warrants in excess of the revenue for 1885. In
anticipation of this defense, it is alleged in the petition
that though the county court had issued warrants in
excess of the total revenue for that year, still the plain-
tiff's debt was created by law, and not by the act of the
county court, and that the county debts for that year
created by law were less than the county revenue for
the same year.

The case was tried on the following agreed facts :
" That, on the seventh day of May, 1885, the clerk of
the county court of Knox county, Missouri, bought
from Geo. D. Barnard certain books and stationery for
$83.90 ; that said books and stationery were suitable
and necessary for the use of said clerk in his said offi-
cial capacity ; that thereupon said Barnard presented
said bill, for said books and stationery, to the county
court of said county, which said court audited and
allowed said bill, and issued the warrant filed herein ;
* * * that there is no money in defendant's treasury
now to pay the same ; that, at the time of issuing said
warrant, the said county court had issued warrants in
excess of the total revenue of said county for the year

1885, raised by a levy of fifty cents on the hundred dollars, and from licenses and other sources; but excluding the warrants issued during the said year for support of paupers, and roads, and bridges, the remainder did not exceed such fifty cents on the hundred dollars; * * * that no vote of the people of the county, on the question of paying this warrant, or the creation of the debt evidenced thereby, has ever been had. The annual revenue of the county, to the extent of fifty cents on the one-hundred-dollar valuation, is now entirely consumed by the ordinary annual expenses of the county government."

The provisions of the constitution to be considered in the disposition of this case are found in sections 11 and 12, of article 10. The first provides: "For county purposes the annual rate on property, in counties having $6,000,000 or less, shall not in the aggregate exceed fifty cents on the one-hundred-dollar valuation." The same section fixes the maximum annual rate of taxes for city and town purposes, and for school purposes, and contains these exceptions: *First.* The annual rate for school purposes may be increased to a designated amount by a majority vote of the taxpayers. *Second.* The rate may be increased by a two-thirds vote for the purpose of erecting public buildings. The rate allowed to each county is to be ascertained by the amount of taxable property therein, according to the last assessment. "Said restrictions as to rates shall apply to taxes of every kind and description, whether general or special, except taxes to pay valid indebtedness now existing or bonds which may be issued in renewal of such indebtedness."

Section 12 declares: "No county * * * shall be allowed to become indebted in any manner, or for any purpose, to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to

be held for that purpose ; nor in cases requiring such assent shall any indebtedness be allowed to be incurred to an amount including existing indebtedness, in the aggregate, exceeding five per centum on the value of the taxable property therein," etc.

The statute makes it the duty of the county court at its May term, in each year, to divide the revenue collected, and to be collected, into five designated and described funds, one of which is a contingent fund not to exceed one-fifth of the total revenue of the county for county purposes for any one year ; and each fund is declared to be a sacred fund for the purpose for which it is designated.   R. S. 1879, secs. 6818, 6819.

In 1875 and prior thereto, many of the counties and cities in this state were burdened with debts, because of bonds issued in aid of railroads, some of which were never built, and on account of extravagance, frauds and defalcations of officials.   To put an end to this state of affairs, the constitution adopted in that year denied to any county or city the right to thereafter take stock in, or loan its credit to, any railroad company or other corporations ; and, by the two sections before mentioned, sought to bring the administration of county affairs to a cash basis.   As said in *Book v. Earl*, 87 Mo. 246, the evident purpose of the framers of the constitution and the people in adopting it was to abolish, in the administration of county and municipal government, the credit system, and establish the cash system by limiting the amount of tax which might be imposed by a county for county purposes, and by limiting the expenditures in any given year to the amount of revenue which such tax would bring into the treasury.

We do not understand counsel for the appellant to dispute these propositions ; but the claim is made and pressed with much vigor, that section 12 does not include debts like that for which the warrant in question was given.   The line of argument is this :   As the statute makes it the duty of the county clerk to provide

suitable books and stationery for his office ( R. S. 1879, sec. 623 ), a debt created for such a purpose is not one incurred or created by the county court, but is a debt created by law, and that such debts are not within the prohibition. Authorities are cited which give support to such a distinction. *Grant Co. v. Lake Co.*, 17 Or. 453 ; *Barnard & Co. v. Knox Co.*, 37 Fed. Rep. 563, and *Rollins v. Lake Co.*, 34 Fed. Rep. 845. The case last cited, it may be observed, was reversed by the supreme court of the United States. 130 U. S. 662.

On the other hand the constitution of Colorado contains this provision : "And the aggregate amount of indebtedness of any county for all purposes, exclusive of debts contracted before the adoption of this constitution, shall not at any time exceed twice the amount above limited, unless," etc. The supreme court of that state said, when speaking of this clause : "The limitation being applicable to all debts, irrespective of their form, it follows that in determining the amount of county indebtedness county warrants are to be taken into account and any warrant which increases the indebtedness over and beyond the limit fixed is in violation [of the constitutional provision, and void." *The People ex rel. v. May*, 9 Col. 80–98.

The circuit court of the United States in *Rollins v. Lake Co.*, *supra*, when having under consideration the clause of the Colorado constitution before quoted, held that warrants, issued for fees of witnesses, jurors, constables and sheriff, were not within the prohibition, because issued in payment of compulsory obligations; and, hence, it was no defense in an action upon such warrants that at the time they were issued the limit fixed by the constitution had been reached.

The supreme court of the United States when speaking upon this question in the same case said : "Neither can we assent to the proposition of the court below that there is, as to this case, a difference between

indebtedness incurred by contracts of the county and
that form of debt denominated 'compulsory obliga-
tions.' The compulsion was imposed by the legislature
of the state, even if it can be said correctly that the
compulsion was to incur debt; and the legislature
could no more impose it than the county could volun-
tarily assume it, as against the disability of a con-
stitutional prohibition. Nor does the fact that the
constitution provided for certain county officers, and
authorized the legislature to fix their compensation and
that of other officials, affect the question. * * * In
short we conclude that article 6 aforesaid is a limita-
tion upon the power of the county to contract any and
all indebtedness including all such as that sued upon
in this action; and, therefore, under the stipulation
already set forth, the county is entitled to judgment."
*Lake Co. v. Rollins,* 130 U. S. 662.

A clause in the constitution of Illinois declares that
"no county, city, etc., shall be allowed to become
indebted in any manner, or for any purpose," beyond a
stated amount. Yet the decisions of the supreme court
of that state recognize no such distinction as that
sought to be made in the case at bar. The result of
the decisions of that court is, that it can make no
difference whether the debts be created for necessary
current expenses or for something else. *Prince v. City
of Quincy,* 105 Ill. 138; s. c., 105 Ill. 215.

The supreme court of Iowa when speaking of the
same clause in the constitution of that state says:
"The language of this provision is very general and
comprehensive. It includes indebtedness incurred in
any manner or for any purpose." *City of Council
Bluffs v. Stewart,* 51 Iowa, 385. It is true the clauses
in the constitutions of the states just named prohibit
the incurring of indebtedness beyond a specified per
cent. of the assessed value of the taxable property,
while in our constitution the prohibition is against the
incurring of an indebtedness in excess of the revenue

of the particular year. But we do not see that this difference affects the question in hand. The object of all these provisions is to fix a limit to county and municipal indebtedness.

Our constitution, it will be seen, first limits the rate of taxation for county purposes to fifty cents on the one-hundred-dollar valuation in counties like the one in question. This rate may be increased by the assent of the qualified voters for the purpose of erecting public buildings, but it cannot be increased even by such assent for any other purpose.

We have held that a county court cannot levy a tax in excess of the fifty cents for any purpose, except for the purpose of erecting public buildings, and for the purpose of paying indebtedness existing at the date of the adoption of the constitution. *Arnold v. Hawkins*, 95 Mo. 569; *Black v. McGonigle*, 103 Mo. 192. The maximum limit of the rate of taxation for county purposes being thus fixed, section 12, to repeat, declares: "No county, city * * * shall be allowed to become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year." As to counties the only exception is, that with the assent of the voters the expenditures may be increased for the erection of a courthouse or jail. The language just quoted is clear and explicit and construes itself; it is broad and comprehensive as to the character of the indebtedness. It includes indebtedness created *in any manner or for any purpose.*

This strong and comprehensive language admits of no distinction between debts created by a county court and debts created by law. In a sense all county debts are created by law; for the counties possess those powers and those only which are conferred upon them by the constitution and laws of the state. While it is the duty of the county court to care for paupers and insane persons and to build bridges and repair roads, still the

county court is governed by the statute in the perform-
ance of these duties.   Debts incurred for such purposes
may be called debts created by law as well as debts
incurred by the county clerk for books and stationery.

Nor does it make any difference that the debt in
question was created by the clerk instead of the county
court.   The clerk in the purchase of the books and
stationery acted as a county officer ; the debt incurred
by him, if he did not exceed his authority, is just as
much a county debt as one incurred by the county
court.   The law confers upon various county officers
the power to create debts for designated purposes, but
the debts are all county debts when chargeable to the
county.   The county clerk, county court and other
county officers must take notice of these constitutional
limitations, and exercise the powers conferred upon
them in subordination to such restrictions.   To hold
otherwise is to say the clerk and other officers may
execute statutory powers in excess of constitutional
restrictions, and thus make the statute laws override
the constitution.

It is, of course, a hardship to the plaintiff to
declare this warrant worthless, but we cannot dispose
of the question on any such surface view of the matter.
The constitution seeks to protect the citizen and tax-
payer, and their rights are not to be overlooked.   It is
the duty of persons dealing with counties and county
officials, as well as of county officials themselves, to
take notice of the limit prescribed by the constitution.
1 Dill. Munic. Corp. [4 Ed.] sec. 134a.   Soliciting
agents, contractors and others who deal with county
officials must see to it that the limit of county indebted-
ness is not exceeded, and, if they fail to do this, they
must suffer the consequences.   Unless this is so there
is an end to all effort to bring about an economical and
honest administration of county affairs.   If this scheme
of county finances built up by the constitution is a mis-
take, or if it produces great hardships in some counties,

the remedy is with the people and not with the courts. "What a court is to do, therefore, is to declare the law as written, leaving it to the people themselves to make such changes as new circumstances may require." Cooley on Const. Lim. [5 Ed.] 67.

The plaintiff insists that there is no substantial difference between this case and *Potter v. Douglas Co.*, 87 Mo. 240. In that case the plaintiff sued Douglas county for services performed by him as jailer of Greene county, in keeping, boarding, clothing and taking to court prisoners. The indebtedness was incurred under section 6090, Revised Statutes, 1879. The agreed statement showed "that, at the time the fee bill was presented to the county court, the revenue for said years was expended, and the same could not be paid without issuing warrants in excess of the income and revenue for said years." On this statement we held the plaintiff could recover. It is to be observed that the agreed statement in that case did not show that the revenues had been expended when the indebtedness was incurred. For aught that appears there may have been revenues unexpended and set apart to the proper fund when the indebtedness was contracted. Our opinion, however, is not placed on any such ground. It is placed upon grounds which would include the case in hand, and which are inconsistent with what has been said on the present occasion. There is, of course, a difference between the facts in that case and the facts in the present one, but the constitution takes no notice of such differences. That case is, therefore, overruled.

Now the agreed statement in this case does not, in terms, say that the contingent fund set apart for 1885 had been exhausted when the books and stationery were purchased; but it does show that the warrant was issued at the date of the purchase, and that at that time the county court had issued warrants in excess of the total revenue for that year. This statement must be taken in connection with the petition which is framed

upon the theory that the whole of the revenue had been consumed, unless warrants issued for the support of paupers and for building bridges and repairing roads are to be excluded.   We think it sufficiently appears that the contingent fund had been consumed when the debt sued for was incurred.   Indeed, this proposition is not questioned in the briefs.

The warrant was issued in violation of the constitution, and is void.   Judgment affirmed.   BARCLAY, J., absent; the other judges concur.