MOUNTAIN GROVE BANK, *Appellant*, v. DOUGLAS COUNTY.

Division One, November 15, 1898.

1. **Statutory Construction**: RULE OF PROPERTY.  After a statute has been settled by judicial construction, the construction becomes, so far as rights acquired under it are concerned, as much a part of the statute as the text itself, and a change in the decision of the court, is, to all intents and purposes, the same in effect on contracts as if made by legislative enactment.

2. ———: ———: WHEN INVOKED.  But such rule can not be invoked, in a suit on county warrants, when none of the items of indebtedness, to pay which the county has issued its warrants, were made in pursuance to a contract based upon the faith of a rule of construction announced in a previous decision of this court.

3. ———: ———: ———: COURT FEES.  It can not be said that witnesses and jurors attended court, when subpoenaed or attached, on the assurance that this court in one of its decisions had held that the county could issue warrants to pay their fees even though there was no money in the treasury for paying such warrants. Nor that the county clerk or the sheriff took public office in reliance upon such decision.  And hence such decision can not be invoked as having established property rights in such matters, either as a construction of a statute or of the Constitution.

4. **Construction of Constitution**: RULE OF PROPERTY: DISCUSSED. Whether or not the construction placed upon certain language of the Constitution by a former decision is *stare decisis* as establishing property rights, is discussed in this opinion, but not decided, because. not necessary for a proper disposition of the case.

5. **County Warrants**: WHEN LEGAL. County warrants issued at a time when there is money in the treasury belonging to the proper fund for their payment, are not rendered illegal because the money is afterwards paid out on other warrants subsequently issued.

6. ———: WHEN DEBT WAS CREATED. The county's debt is created, not when its warrants are issued, but when the services of its jurors or officers are rendered, or the goods are sold and delivered to it.

7. ———: ———: BURDEN OF PROOF. In a suit by the holder of county warrants, the burden of proof is not on the county to show that its revenues were exhausted at the time the debts, for which the warrants were issued, were created.

8. ———: ———: ———: KNOWLEDGE IN POSSESSION OF ONE PARTY. It can not be said that a party, to whom goods are sold or services rendered, has peculiarly within his possession a knowledge of the date of such service or sale, even though such party be a county.

*Appeal from Douglas Circuit Court.*—HON. W. N. EVANS, Judge.

REVERSED AND REMANDED.

*A. H. Livingston, James R. Vaughan* and *Thos. H. Musick* for appellant.

(1) The county becomes indebted in any year for services performed or goods sold and delivered during that year up to the constitutional limitation of the amount of revenue provided for that particular year. *Andrew Co. ex rel. v. Schell*, 135 Mo. 31. (2) Neither the allowance of a claim nor the issuance of a warrant in evidence of such allowance, creates the debt. *Copp v. St. Louis Co.*, 34 Mo. 383; *Barnard & Co. v. Knox Co.*, 105 Mo. 391; *Reynolds v. Douglas Co.*, 114 Mo. 513; *Wilson v. Knox Co.*, 132 Mo. 399; *Rippey v. Jefferson Co.*, 47 Mo. 68; *City of Sherman v. Langham*,

40 S. W. Rep. 140. (3) A valid claim against a county may be sued upon and collected though no warrant is ever issued and no allowance ever made. *Rippey v. Jefferson Co.*, 47 Mo. 68; *Phelps Co. v. Bishop*, 46 Mo. 68. (4) So the adverse action of the county court on a claim presented for allowance may be appealed from and judgment had in the circuit court. *Rippey v. Jefferson Co.*, 47 Mo. 68; *Phelps Co. v. Bishop*, 46 Mo. 68. (5) If the contrary theory were to prevail warrants up to the limitation might be allowed in one year for services performed and goods purchased wholly in preceding years, thus wholly absorbing the revenues for the year in which the warrants might be issued. *Andrew Co. ex rel. v. Schell*, 135 Mo. 31. (6) We should have judgment on all those warrants which the referee has found we have in suit and which are for services whose dates can not be ascertained. (7) All the warrants in suit are valid and plaintiff is entitled to judgment upon all of them by reason of the ruling of the Supreme Court in the case of *Potter v. Douglas Co.*, 87 Mo. 239; that opinion settled the law and became a rule of property in this State until it was overruled by the decision of *Barnard & Co. v. Knox Co.*, 105 Mo. 382; *Farrier v. New Eng. M. & S. Co.*, 33 Cent. Law Jour. 190; *State v. Miller*, 50 Mo. 129; *Green Co. v. Conness*, 109 U. S. 104; *Taylor v. Ypsilanti*, 105 U. S. 72; *Douglas v. Pike Co.*, 101 U. S. 677; *Harmon v. Auditor*, 123 U. S. 135; *Reed v. Ownby*, 44 Mo. 204; *State, to use, v. Saline Co.*, 48 Mo. 390; *Hardigree v. Mitchum*, 51 Ala. 151; *Hollinshead v. Glahn*, 4 Minn. 190; *Barnard & Co. v. Knox Co.*, 37 Fed. Rep. 563. (8) This doctrine of *stare decisis* applies to constructions of the Constitution as well as of statutes, and the common law. *Webb v. Lafayette Co.*, 67 Mo. 368; 23 Am. and Eng. Ency. of Law, 31; 33 Cent. Law Jour. 193; *Seale v. Mitchell*, 5 Cal. 403.

*E. H. Farnsworth* for respondent.

MARSHALL, J.—This is an action against the defendant, a political subdivision of this State, to recover upon several hundred warrants and jury scrips. Each warrant is made the basis of a separate count. The counts allege that on a specified date the defendant was indebted to a person named (for what is not stated) in a specified sum and that on the date named after the county court ascertained the fact, it ordered its clerk to draw a warrant therefor on the county treasurer, which the clerk did, commanding the treasurer to pay it out of the contingent fund; that by divers assignments plaintiff became the owner of the warrant; that the warrant was presented to the treasurer, who refused to pay it, indorsing on it the fact of presentation and that there was no money in the treasury appropriated for that purpose.

The answer denied the indebtedness, and set up seven defenses as follows: 1st. That the warrant is void, because it was issued after the county court had issued warrants in excess of the county's revenue for the current year, and in excess of the appropriation for contingent purposes for that year; 2d. That it is void because at the time it was issued the county court had issued warrants in excess of the total revenue for the year, raised by a levy of fifty cents on the one hundred dollars valuation, the sum limited by law, exclusive of warrants issued during the year for the support of paupers, roads and bridges; 3d. Because at the commencement of this action the authorized revenues of the county for the year had been entirely consumed by the legitimate annual expenses of the county government; 4th. Because neither the payment of the warrant nor the creation of the debt had ever been authorized by a vote of the people of the county; 5th. Because at the

time the warrant was issued there was not, and is not now, any money in defendant's treasury for its payment; 6th. Because the total assessment of taxable property of the county for the year 1890 (the warrant was issued in February, 1890), was $1,191,349, and the amount of revenue derived therefrom was $6,369.24, appropriated and set apart as follows: For paupers, $550; for road fund, $950; for county officers, $3,250; for contingent fund, $300; for jury fund, $1,000; and that the debt was contracted and the warrant issued after the contingent fund was exhausted; 7th. Because the assessed value of the taxable property in the county for the year 1889 was $1,155,553, and the total revenue derived therefrom was $5,777.50, appropriated as follows: Pauper fund, $500; road fund, $950; county officers fund, $3,250; jury fund, $1,000; contingent fund, $300, and that the debt was contracted and the warrant issued after the contingent fund was exhausted; and that the assessed value of the taxable property of the county for the year 1888 was $963,974, and the total revenue derived therefrom was $4,819.87 and the same was not appropriated or set apart, but was exhausted May 12th, 1888, and that the debt was contracted and the warrant issued after the internal revenue was exhausted.

The case was sent to a referee who reported upon two different theories: 1st. Upon the theory that the fiscal year begins on the first of January, and that the auditing and allowing of a claim and ordering a warrant to issue, constitutes the creation of the debt; and 2d, upon the theory that the fiscal year begins on January 1st, and that the debt is created at the time the services are performed or the goods sold and delivered, and that the fund for one year is not exhausted until warrants are issued for services rendered or goods sold

and delivered during such fiscal year to the full amount of the whole revenue for such fiscal year.

Upon the first theory, he reports that two warrants, in suit, amounting to $3.50 were issued prior to the time the revenue for 1888 was exhausted; that three warrants, in suit, amounting to $22.30 were issued before the revenue for 1889 was exhausted, and that two warrants in suit amounting to $23.05 were issued before the revenue for 1890 was exhausted. These amounts aggregate $48.85.

Upon the second theory the referee found, "the total amount warrants issued during the years 1888, 1889 and 1890, issued for services performed and goods sold and delivered between Jan. 1st of each year and the date and warrant when fund for each respective year was exhausted, where dates have been found, $808.77." The referee also reports that as to $493.88 he is unable to discover the dates when the services were rendered or the goods were sold and delivered. The plaintiff filed exceptions to the referee's report, which the court overruled, and thereupon the cause was submitted to the court upon the following agreed statement of facts:

"It is agreed by the parties, plaintiff and defendant in the cause above entitled, as follows:

"That the warrants mentioned in the different counts of plaintiff's petition were ordered drawn by the county court of Douglas county on the county treasurer of said county at the respective dates mentioned in the different counts, and that the county clerk of the county court drew said warrants pursuant to said orders and for the sums named in them, directing and commanding said treasurer to pay the sums of money named in the different warrants to the payees therein for the purposes recited by the warrants.

"That the said jurors and witnesses referred to in the different counts of said petition were chosen, selected, summoned and qualified, recognized to' attend said circuit court as in said counts set forth and that they traveled the number of miles and attended the number of days as stated and that the same were entered in a book kept for that purpose in manner and by law required on said jurors' and witnesses' application as in said scrip stated, the same was duly verified by said jurors' and witnesses' oaths and that said scrip and warrants were signed and given by the said circuit clerk as in the said counts stated and verified by said circuit clerk's official signature.

"That said scrip and warrants issued to said witnesses before said grand jury, were duly countersigned by the foreman of the respective grand juries before which they attended as in said counts stated.

"That said warrants and scrip were assigned in the manner required by law to the assignees named in the several counts and finally to the present plaintiff which is now the legal holder and owner of said warrants and scrip.

"That the said warrants and scrip were presented to the county treasurer of said county for payment and payment demanded at the time mentioned in the several counts, but the treasurer refused to pay the said warrants and scrip because there was no money in the treasury for that purpose and indorsed them in these words: "The within warrant presented for payment and no money in the treasury for that purpose this —— day of —— 18—, ——. County Treasurer," the blank spaces in said indorsements being filled with the date of presentments and signed by the county treasurer on whom demand was made, as on the backs of said scrip and warrants stated.

"That plaintiff is a corporation duly organized.

"That all said warrants remain due and unpaid.

"That this suit involves the legality and payment of 286 warrants and jury and witness scrip issued in the years 1888, 1889 and 1890 in the aggregate amount of $3,570 exclusive of interest of which amount,

| | |
|---|---:|
| There are on account of criminal costs | $1,271 02 |
| Stationery, books and blanks | 785 47 |
| Roads | 53 60 |
| Paupers and insane | 255 10 |
| Insurance on court house | 51 00 |
| Salary of judges of county court | 133 58 |
| Salary of sheriff and jailer | 261 40 |
| Repairs on court house | 12 23 |
| Rent of building for jail | 25 00 |
| Fuel | 15 55 |
| Jury and witnesses | 314 95 |
| Salary and fees of county clerk | 282 54 |
| Printing | 89 40 |
| Sundries and unknown | 29 57 |
| | $3,570 00 |

"That the cause was referred by the court by consent of parties to Hon. A. Burkhead as referee to ascertain and report:

"1. When the several debts were incurred for which said warrants were issued.

"2. When the revenues of the county were exhausted in each of the years 1888, 1889 and 1890 by indebtedness incurred in each of these years respectively.

"3. For what amount of these warrants the county is legally liable.

"4. That said referee heard evidence and there was evidence tending to support his finding which was filed in the case on 25th of March, 1895, and exceptions filed thereto on 27th of March, 1895, by plaintiff."

Vol. 146 mo—4

Plaintiff then asked and the court refused to give the following instructions:

"1.   That upon the evidence and the referee's report the plaintiff is entitled to recover upon all the warrants and scrip sued on.

"2.   That upon the evidence and said finding and the facts as agreed on in this case the plaintiff is entitled to recover on all the warrants and scrip issued for services rendered and materials sold, attendance of witnesses and jurors' services, salaries, etc., accruing after the decision of the Supreme Court of the State in *Potter v. Douglas County*; that said decision and its acceptance and following throughout this State constitute a rule of property and created vested rights which could not be divested by any subsequent decision overruling the same.

"3.   That it is a violation of the obligation of the contract between the original holders of said warrants and scrip as well as their assignees to hold that the validity of the said scrip and warrants is effected by any decision of the Supreme Court contrary to the construction maintained at the time said warrants and scrip were issued.

"4.   That the decision in *Potter v. Douglas County*, 87 Missouri 239, constituted a rule of property as to the warrants issued for county officers' salaries, books and stationery for such officers, jurors' and witnesses' fees, and in so far as the decision in *Barnard & Co. v. Knox County*, 105 Mo. 382, may appear to reach and effect the validity of such scrip and warrants the same is violative of the obligation of contracts, and hence said decision can not be held to apply to such warrants and scrip after the decision in said *Potter* case for services, etc., rendered and received thereafter.

"5.   That the opinion of the Supreme Court of this State in construing section 12, article 10 of the

constitution of the State in the case of *Potter v. Douglas County*, reported in 87th Missouri Report, is based upon two propositions of construction: First, that the inhibition in said section contained did not apply to county debts of a contingent character the amount of which could not be foreseen nor anticipated by the county court; and second: That it did not apply to indebtedness which accrued by reason of statutory provisions over which county courts had no other control than that of auditing boards; that from the rendering of said opinion in 1885 until the reversal thereof by the opinion rendered by the same court in the case of *Barnard v. Knox County* in 1891, reported in 105th Missouri Report, such construction became and was the settled and fixed construction of said section 12 in this State, and the law of this State on the subject and a rule of property governing the legality of county indebtedness, and if it appears that all the warrants in suit were issued between said dates and for services rendered and for materials furnished to defendant county between said dates, then the judgment should be for plaintiff for the whole of said warrants and scrip.

"7. That plaintiff is entitled to recover upon all warrants and scrip which were issued for services rendered or materials furnished for and to defendant before the exhaustion of the revenue of the year in which they were respectively issued by indebtedness already incurred in such year for services rendered and materials furnished in such year.

"8. The plaintiff is entitled to judgment upon all warrants and scrip which do not affirmatively appear to have been issued for indebtedness incurred in any year after the exhaustion of the revenues of the county for that year in which they were respectively issued by

prior indebtedness incurred for services rendered and materials furnished for and to defendant county.''

## I.

Plaintiff's contentions are: *First,* That the decision of this court in *Potter v. Douglas County,* 87 Mo. 239, constituted a rule of property, and that any warrants that were issued upon the faith of that decision are not affected or. invalidated by the overruling of that case by the decision in *Barnard v. Knox County,* 105 Mo. 382; *Second,* That under the rule laid down in the *Barnard* case, it is entitled to a judgment for $808,77 and $48.85 upon the referee's report; and *Third,* That it is entitled to a judgment for $493.88, on the referee's report.

In support of its first contention plaintiff asserts the proposition: ''After a statute or Constitution has been settled by judicial construction, the construction becomes, so far as rights acquired under it are concerned, as much a part of the statute or Constitution as the text itself, and a change in the decision of the courts is, to all intents and purposes, the same in effect on contracts, as if made by legislative enactment or a constitutional convention.'' Without the interpolated words about the Constitution and a constitutional convention, this statement is substantially and almost literally the language of Chief Justice WAITE in *Douglas v. County of Pike,* 101 U. S. 687. The doctrine thus stated is almost universally accepted as applied to decisions construing statutes, especially where there has been a long line of decisions on the question, but even then the doctrine of *stare decisis* has not been followed where a palpable wrong or injustice would be done, or where the mischiefs to be cured far outweigh any injury that might be done in the particular case by overruling prior decisions. A distinction has also been drawn

where only one decision is relied on as establishing the doctrine. *Butler v. Van Wyck*, 1 Hill. 462; *Leavitt v. Blatchford*, 17 N. Y. 533; *Pratt v. Brown*, 3 Wis. 609; *Callender's Adm'r v. Ins. Co.*, 23 Pa. St. 474; *State v. Silvers*, 47 N. W. Rep. 772. Whether the doctrine applies to the construction of the Constitution is a question that has been differently decided in different jurisdictions. The Supreme Court of the United States enforces the principle. *Taylor v. Ypsilanti*, 105 U. S. l. c. 71–72; *Greene Co. v. Conness*, 109 U. S. 104. Some of the text writers also lay down the rule that there is no difference in the application of the doctrine to decisions upon the Constitution and upon statutes. Endlich on the Interpretation of Statutes, sec. 529; Sutherland on Statutory Construction, sec. 317. The last named author says: "The two grounds of justification in departing from even a single decision which has become a general rule of property within a certain line of dealing, are 1st, the necessity of preventing further injustice; 2nd, the necessity of vindicating clear and obvious principles of law." On the other hand in *Boyd v. State*, 53 Ala. l. c. 608, and *Willis v. Owen*, 43 Texas, 41, it •was held that this doctrine did not apply to cases construing the Constitution. And in *O. V. & S. K. R. R. v. Morgan Co.*, 53 Mo. l. c. 158, while the court refused to overrule its prior decisions, it said: "*It is true that constitutional questions are always open to examination.*" It may not be amiss to remark that in most of the jurisdictions where the doctrine has been applied to decisions interpreting constitutional provisions as strictly as it has to those construing statutes, their reports are not without instances where the rule announced has not been observed, but that prior decisions have been overruled, from such considerations as Sutherland says justify such a course, or upon the broader ground, that a

further adherence to such prior cases would do more mischief to the public generally than it would harm to a few people.

There is another reason for a distinction between decisions construing statutes and those construing the Constitution. If the people are dissatisfied with the construction of a statute, the frequently recurring sessions of the legislature affords easy opportunity to repeal, alter or modify the statute, while the Constitution is organic, intended to be enduring until changed conditions of society demand more stringent or less restrictive regulations, and if a decision construes the Constitution in a manner not acceptable to the people, the opportunity of changing the organic law is remote. Moreover no set of judges ought to have the right to tie the hands of their successors on constitutional questions, any more than one General Assembly should those of its successors on legislative matters.

But the case at bar can not fairly be said to entitle plaintiff to invoke the doctrine contended for by him. None of the items for which the warrants here involved were issued can be tortured into a contract between Douglas county and the persons in whose favor they were issued, based upon the faith of the rule announced in *Potter v. Douglas Co.* Those items are set out in the agreed statement of facts. One of them relates to matters belonging to the first class of expenses, for which sections 7663 and 7664, Rev. Stats., require the county revenues to be appropriated and to which it is solemnly pledged, one belongs to the second class, two belong to the third class, two to the fourth class, and seven to the fifth class. The first class, required by those sections of the statutes, relates to necessary expenses for the care of paupers and insane persons; the second, to building bridges and repairing roads including the pay of road overseers; the third, to the salary

of county officers; the fourth, to fees of grand and petit jurors, judges and clerks of election and fees of witnesses for the grand jury, and the fifth, to contingent expenses.  Of the $3,570 covered by the claim in this case, $2,263.49 represents criminal costs, salary of judges of the county court, jury and witness fees and salary and fees of county clerk, and salary of the sheriff and jailor.  It can not be successfully claimed that the jurors and witnesses attended the court, when subpoenaed or attached, on the assurance of the decision in *Potter v. Douglas Co.* and that without this they would have refused to attend when ordered; or that the judges or clerks of the county court or the sheriff and jailor took public office on the confident reliance that their salaries and fees would be paid whether the revenues of the county were enough to pay them or not.  They each and all knew that the limit of taxation allowed by the Constitution for county purposes was fifty cents on the one hundred dollars valuation, and that if the sum realized in this way was not sufficient to pay all the expenses in the order of payment required by the provisions of section 7663, they would not get all they otherwise would.  The persons who rendered the services and sold and delivered the goods embraced in the other items covered by the warrants were likewise informed.  As to none of these claims therefore did the decision in *Potter v. Douglas Co.* hold out an inducement, afford a shield of protection or become a rule of property. So that the decision in *Barnard & Co. v. Knox Co.* can not be considered as impairing the obligation of any contract they thus had with the county.  The first contention of plaintiff is therefore untenable.

As to the second contention, it appears from the report of the referee, that upon the theory that the issuing of the warrant creates the debt, there were war-

rants for 1888, 1889 and 1890, amounting to $48.85 which were issued before the revenues belonging to the respective classes to which they properly belonged, were exhausted; and that upon the theory that the debts were created when the services were rendered, there were warrants for said years amounting to $808.77 issued before the revenues, belonging to the respective classes to which they belonged, were exhausted.   There is no countervailing showing made by the defendant.   Under these circumstances we are not able to see upon what theory the court below refused the seventh instruction asked by plaintiff to the effect that it was entitled to recover on these warrants.   The fact that the money had been paid out upon warrants issued after these does not affect these warrants.   It rendered those issued in excess of the sums respectively appropriated for the several classes, and in excess of the revenues for that year, void, but it affords no excuse for refusing to pay those that were legal and properly issued.

The second theory upon which the referee stated the account, that the debt was created when the services were rendered or the goods sold and delivered is the correct statement of the law, and upon this the plaintiff was entitled to a judgment for $808.77 but not for the $48.85, for that is included in the $808.77, and the circuit court erred in not so finding.

As to the third contention, the referee found that warrants amounting to $493.88 were issued but he was unable to ascertain the dates when the services were rendered or the goods sold and delivered.   Plaintiff bases its claim to a judgment for this amount upon the contention that the burden of proof is upon the defendant to show that the revenues for the respective years were exhausted when these debts were created, and that the evidence regarding the services for which

these warrants were issued is in the defendant's possession and hence it was its duty to prove the time. This is a misconception of the pleadings. The answer is, first, a general denial of indebtedness to the person to whom the warrant was issued, and, second, special constitutional defenses. Under the first, the burden of proof was upon plaintiff to prove a valid indebtedness, which includes dates as well as items and amounts. Then if the plaintiff made out a prima facie case, the burden of the evidence shifted to defendant to rebut the prima facie case and to establish in the first instance, its affirmative defenses. This also establishes that the rule of evidence that where a fact or evidence of a fact is peculiarly within the knowledge or control of one party to a suit, the burden is on him in the first instance, has no application to this case, for the party who renders services or sells and delivers goods knows the dates as well as the party to whom the services were rendered or the goods were sold and delivered. It follows therefore that there was no error in the judgment of the circuit court in respect to this $493.88.

For the error of the circuit court in not entering judgment for the plaintiff for the $808.77 aforesaid the judgment is reversed and the cause remanded to be proceeded with in accordance herewith.

All concur..