# CITY OF SEDALIA to use of SEDALIA NATIONAL BANK, Appellant, v. DONOHUE.

### Division One, October 11, 1905.

1. **STARE DECISIS: Decisions of Inferior Courts.** Prior decisions of an inferior court cannot afford a basis for the application of the doctrine of *stare decisis* in the Supreme Court. The decision of one of the courts of appeals is in no proper sense binding on the Supreme Court.

2. ———: **Rights of Property: Judicial Legislation.** The doctrine of *stare decisis* is not applicable where the prior decision is wrong, or is in conflict with positive law, or where a further adherence thereto would amount to judicial legislation.

3. **IMPAIRMENT OF CONTRACTS: By Judicial Interpretation.** The inhibition of the Constitution in reference to the impairment of contracts refers to impairment by some act of the legislative power of the State, and not by a decision of the courts. Where a court has rendered an erroneous decision interpreting a statute, and a city in reliance upon that decision has issued

taxbills and the plaintiff has bought them, the Constitution declaring that "no State shall enact any law impairing the obligation of contracts," does not, on the theory that that decision became a part of the statute, inhibit the courts from holding such taxbills invalid.

4. STREET IMPROVEMENT: Assessment: By Resolution.   A street improvement in a city of the third class cannot be authorized by a resolution of the council. The power to order the improvement to be done, and to contract therefor, and to levy the taxes to pay for the same, can be exercised only by ordinance.

5. ———: ———: Before Work is Done. The city council cannot levy and assess a special tax for a street improvement before the work is done, because it cannot know what the cost will be until the contract for doing the work is let.

6. ———: ———: By Clerk. Nor can it delegate to the city clerk, upon the coming in of the written calculations of the engineer, the power to apportion the cost, assess each lot with its share, and issue taxbills therefor. The power to levy taxes to pay for street improvements is vested in the council, and it can exercise the power only by ordinance.

Appeal from Pettis Circuit Court.—*Hon. Geo. F. Longan*, Judge.

Affirmed.

*J. H. Bothwell* and *Charles E. Yeater* for appellant.

(1)   The contractors having invested their money and labor and the Sedalia National Bank, the present owner of the taxbills in suit, having bought the same on the faith of the case of Nevada to use v. Morris, 43 Mo. App. 586, which construed the statutes in question, the court under the doctrine of *stare decisis* must hold these particular bills valid, even though it upholds the defendant's contention that an ordinance assessing the special tax was necessary after the acceptance of the work.  Railroad v. Fowler, 142 Mo. 687; Long v. Long, 79 Mo. 656; Wilson v. Beckwith, 140 Mo. 381; Dunklin Co. v. Chouteau, 120 Mo. 593; Pittelkow v. Milwaukee,

94 Wis. 655; Sutherland on Statutory Construction, sec. 317; cases cited under point 4, post. (2) The contractors and the bank had a particular right to rely on the construction set forth in the Morris case, because the statutes construed in that case (secs. 1495 to 1501, R. S. 1889), were re-enacted in the same terms in secs. 108 to 110 of the act of April 19, 1893, by which the Legislature adopted the construction of the Morris case. Handlin v. Morgan Co., 57 Mo. 116; Northcut v. Eager, 132 Mo. 277; Sanders v. Anchor Line, 97 Mo. 30; State ex rel. v. Withrow, 133 Mo. 515; Schawacker v. McLaughlin, 139 Mo. 341; Railroad v. Railroad, 138 Mo. 597. (3) Neither of the grounds for departing from a decision, (1) the necessity of preventing further injustice and (2) the necessity of vindicating clear and obvious principles of law, exist here because, (a) conceding the Eddy case to require an ordinance after the completion of the work assessing the tax, this court can refrain from applying the Eddy decision to this particular case, and yet avoid the continuance of a bad precedent, and because all parties acted on the faith of the Morris case, the only existing construction of the statutes, and (b) because under the modern rule the doctrine of *stare decisis,* as to existing rights, is applied at the same time the erroneous precedent is overturned, by providing that the decision shall not be retroactive nor affect rights based on the case declared to be erroneous. Sutherland on Statutory Construction, sec. 317; Long v. Long, 79 Mo. 656; Railroad v. Clark, 119 Mo. 375; Railroad v. Fowler, 142 Mo. 687. (4) Plaintiff bought the taxbills on the faith of the ruling in the Morris case. Therefore, to hold after such a purchase was made, in this particular case, that the ruling in the Morris case is not binding, would be in violation of the tenth section of the first article of the Constitution of the United States, prohibiting the impairment by a State of the obligation of a contract. Douglas v. Coun-

ty of Pike, 101 U. S. 686; Ins. & Trust Co. v. Debolt, 57 U. S. (16 How.) 432; Olcott v. Supervisors, 83 U. S. (16 Wall.) 690; Kenosha v. Lamson, 76 U. S. (9 Wall.) 485; Taylor v. Ypsilanti, 105 U. S. 72.

*George W. Barnett* and *Montgomery & Montgomery* for respondent.

(1) There was no impairment of the obligation of a contract by the decision of the Supreme Court in City to use v. Eddy, 123 Mo. 546, overruling City ex rel. v. Morris, 43 Mo. App. 590. Sec. 10, art. 1, of the Constitution of the United States provides that no State shall pass any law impairing the obligation of a contract. The decision of a court, construing a statute, is not within the inhibition of the Constitution. Storrie v. Cortes (Texas), 18 S. W. 154; Liffinwell v. Warren, 2 Black (U. S.) 603; Gelpcke v. Dubuque, 1 Wall. 205; Stanly County v. Coler, 190 U. S. 444; Bacon v. Texas, 163 U. S. 221; Land Co. v. Ladie, 158 U. S. 109; B. & L. Assn. v. Brahan, 193 U. S. 647; McCulloch v. Virginia, 172 U. S. 127; Weber v. Regan, 188 U. S. 14. (2) Appellant had no justification or warrant for relying upon the decision of the Court of Appeals in the Morris case. (a) Because it was not a decision of the highest court of the State, but only of an inferior appellate tribunal. Art. 6, sec. 3, Const.; Fisher v. Perkins, 122 U. S. 525; Stanley v. Schwalby, 162 U. S. 255; Liffinwell v. Warren, 2 Black 599; Gelpcke v. Dubuque, 1 Wall. 205; Stanly County v. Coler, 190 U. S. 444. The decisions of the Kansas City Court of Appeals are in no manner binding upon the Supreme Court. Hennessy v. Brewing Co., 145 Mo. 104; Paddock v. Railroad, 155 Mo. 524. (b) One decision is never regarded as sufficient, even when rendered by the highest tribunal, unless the decision has stood long enough to become settled law, and therefore a rule of property, and until

titles have become vested on the strength of it.  Wells on Res. Ad. and St. Dec., sec. 599; Callenders v. Ins. Co., 23 Pa. St. 475.  But even then, the rule is not imperative.  A decision, though long concurred in, will not be followed where a palpable wrong or injustice will be done, or where the mischief to be cured far out-weighs any injury which might be done in a particular case. Bank v. Douglas, 146 Mo. 42; Storrie v. Cortes, 18 S. W. 154; McDonald v. Davery, 60 Pac. 1116; Butler v. Van Wyck, 1 Hill 459; Wells on Res. Ad., etc., sec. 624; Hibbitts v. Jack, 97 Ind. 578; Paul v. Davis, 100 Ind. 426; Ocean Beach Assn. v. Brinley, 34 N. J. Eq. 448; Pratt v. Brown, 3 Wis. 603; Smith v. Smith, 13 La. 441; Griffin v. Creditors, 6 Rob. 225; Lagrange v. Barre, 11 Rob. 302.  (3) The statute received the proper construction in City ex rel. v. Eddy, 123 Mo. 546.  Wheeler v. Poplar Bluff, 149 Mo. 36; Moore v. Cape Girardeau, 103 Mo. 470; City of Westport v. Mastin, 62 Mo. App. 647; City of Westport v. Jackson, 69 Mo. App. 148; Poplar Bluff v. Hoag, 62 Mo. App. 672.

MARSHALL, J.—This is an action on a special taxbill for $41.35, being one-third of the total sum assessed against the defendant's lot for the improvement of Main street between Moniteau and Washington avenues in Sedalia.  At the close of the plaintiff's case, the court directed a verdict for the defendant, and judgment was entered upon the verdict, and thereupon the plaintiff appealed.

The petition alleges that the city of Sedalia is a city of the third class; that the Sedalia National Bank is a national bank organized under the laws of the United States; that on the 7th of August, 1893, the city of Sedalia passed an ordinance providing for the macadamizing of Main street between Moniteau and Washington avenues, which ordinance was approved on August 8, 1893; that pursuant to the ordinance, the mayor and

council awarded a contract for the doing of the work to White Bros.; that they did the work; that the work was received, approved and accepted by the mayor and council, by resolution, duly passed on the 4th of January, 1894; that after the completion and acceptance of the work, the cost thereof was duly computed and apportioned among the lots to be charged therewith according to law; that the council did by ordinance levy and assess the cost of the work on the abutting property in proportion to the front feet thereof; that the city clerk apportioned the cost of the work among the property holders and made out and certified taxbills therefor; that pursuant to statute the defendant elected to pay the taxbills in three annual installments, and accordingly three taxbills for $41.35 each were issued, against the property, by said city clerk.

The suit is to recover on the first of said three taxbills. The defendant's answer admits the passage of the ordinance and the letting of the contract, but denies that the work was completed or accepted by the city; denies that the council and mayor of the city, by ordinance, levied and assessed the cost of the work; denies that the city clerk apportioned the cost of the work among the property-owners, but admits that the city clerk issued and delivered to the contractors the taxbills set out in the petition; denies any demand for the payment thereof; avers that the work was not done according to contract or in a workmanlike manner; avers that after the contractor had completed the work, towit, on the 2nd of June, 1894, he reported the same as completed to the city engineer, and thereupon the city engineer reported to the council that the work was finished, and the city council referred the report of the city engineer and the question of the acceptance of the work to the committee on streets and alleys, but that said committee had never made any report thereon; avers that on the 4th of June, 1894, the council passed

a resolution directing the city clerk to issue the taxbills
sued upon, and that the clerk then issued taxbills for
such amount as he believed to be their just proportion
for the work done; that afterwards, the contractors, not
being satisfied with the taxbills and claiming that they
were not large enough, returned them to the city clerk
and had him declare them void and so mark them on
the records in his office and issue new taxbills for a
larger sum against the respective property-owners,
amongst them the taxbills sued on; .avers that said tax-
bills are void and of no effect for said reasons; alleges
that the mayor and city council did not by any ordi-
nance levy any tax or make any assessment upon the
defendant or his property, but that the taxbills sued on
were issued without authority of law by the city clerk.

The reply is a general denial, with express admis-
sions and pleas, among which are, that no ordinance
was passed by the city *after* the work was done, levying
or assessing a special tax therefor; that the plaintiff
purchased the taxbills on the faith of and reliance upon
the decision of the Kansas City Court of Appeals in
the case of City of Nevada to use of Gilfillan v. Morris
(43 Mo. App. 590), rendered February 2, 1891, and that
said taxbills were issued upon the authority of. that
case; alleges that said case was, at the time plaintiff ad-
vanced money to the contractor to do the work and at
the time plaintiff acquired the taxbills, the only adjudi-
cation in this State on the subject, and that that case
held that the city clerk had authority to levy such spec-
ial assessments and issue such taxbills; admits that
thereafter, on the 26th of June, 1894, the Supreme
Court of Missouri in the case of City of Nevada to use
of Gilfillan v. Eddy (123 Mo. 563), held that the city
council had no lawful right to delegate to the city clerk
the right to levy a special assessment for street im-
provements, and to issue special taxbills therefor, and
expressly disapproved and overruled the decision of

the Kansas City Court of Appeals in the Morris case, but the plaintiff, in said reply, averred that the ordinance and work done thereunder and the taxbills issued therefor, antedated the decision of the Supreme Court in said Eddy case, and that "to apply the rule therein laid down to the facts in this case as alleged in the petition and this reply, would give the same retroactive effect, and would impair the obligation of the contracts respectively entered into as aforesaid, by said White Brothers, contractors, and said bank, and would be in violation of the tenth section of the first article of the Constitution of the United States, prohibiting the impairment by a State of the obligation of a contract."

Thus, it will be observed that the petition charges that the council and mayor of the city, by ordinance, levied and assessed the cost of the improvement, whereas the reply admits that the council and mayor passed no ordinance levying and assessing the special taxes, but by implication admits the truth of the answer that the taxbills were issued by the clerk pursuant to a resolution of the council, and that the clerk levied, assessed and apportioned the cost of the work, and avers that the taxbills so issued had been declared legal by the Kansas City Court of Appeals in the Morris case, and that, upon the faith of that case, the plaintiff purchased said taxbills before the decision of this court in the Eddy case, and that to apply the rule laid down by this court in the Eddy case would impair the obligation of the contract between the city and White Brothers, and between White Brothers and the plaintiff, and hence would violate section 10 of article 1 of the Constitution of the United States.

## I.

STARE DECISIS. The plaintiff invokes the doctrine of *stare decisis*. The contention of plaintiff is, that in the case of City of Nevada to use of Gilfillan v.

Morris (43 Mo. App. 586), the Kansas City Court of Appeals held that it was competent for a city clerk of a city of the third class to levy, assess and apportion the cost of a street improvement, and that it was not necessary, under section 1498, Revised Statutes 1889, for the council and mayor, by ordinance, to levy and assess the same, but the act of so doing was a purely ministerial act, which the council might delegate, by resolution, to a city clerk; that the contract with the White Brothers was entered into after said decision, the work was all done and the taxbills issued by the clerk before the decision of this court in the Eddy case, *supra,* and therefore under the doctrine of *stare decisis* this court should enforce the rule laid down by the Kansas City Court of Appeals in the Morris case and should not follow the rule laid down by this court in the Eddy case; that the decision in the Morris case, interpreting section 1498 of the Revised Statutes 1889, which the plaintiff says is substantially the same as the act of April 19th, 1893 (Laws 1893, p. 90, et seq.), must be regarded as a part of the statute, and that to enforce the rule laid down by this court in the Eddy case would act retrospectively upon the contracts of the plaintiff and of White Brothers.

Or, otherwise stated, the position of the plaintiff is, that the doctrine of *stare decisis* requires this court to enforce the decision of one of the courts of appeals with respect to the construction of a state statute, which decision has been expressly disapproved and overruled by this court.

Prior decisions of inferior courts cannot afford a basis for the application of the doctrine of *stare decisis* in this court. The decision of the Kansas City Court of Appeals in the Morris case is in no proper sense binding upon this court. [Hennessy v. Bavarian Brewing Co., 145 Mo. l. c. 115; Paddock v. Railroad, 155 Mo. l. c. 534.]

In Bank v. Douglas County, 146 Mo. 42, it was contended that the warrants in controversy had been purchased upon the faith of the decision of this court in Potter v. Douglas County, 87 Mo. 239, and that the decision in that case constituted a rule of property, and that warrants issued upon the faith of it were not affected or invalidated by the subsequent decision in Barnard v. Knox County, 105 Mo. 382. The contention, however, was held untenable. There is no difference in principle between the contention in that case and the contention in the case at bar. The doctrine of *stare decisis* was invoked in that case just as it is in this case. In fact the same was true of the Barnard case, for it was then claimed that the debt there sought to be enforced had been contracted upon the faith of the decision of this court in the Potter case, but the contention was held untenable.

The doctrine of *stare decisis* is a valuable rule of conduct, and has been applied in proper cases for the purpose of avoiding changes in judicial decisions, but it is not a fixed and iron-clad rule that applies to all cases, and is not observed or enforced where the prior decision is palpably wrong, or is in conflict with positive law, or where a further adherence thereto would amount to judicial legislation.

## II.

The plaintiff invokes the protection of section 10 of article 1 of the Constitution of the United States, which prohibits any State from passing any law impairing the obligation of contracts.

It is not pointed out or claimed that any law has been enacted by the law-making power of this State that in any manner impairs the obligation of any contract the plaintiff has with anyone. This point is, that the decision of the Kansas City Court of Appeals in the Morris case, construing section 1498, Revised Statutes

1889, became a part of that section of the statutes, and that to apply the decision of this court in the Eddy case to the case at bar would violate the guarantee of the Federal Constitution invoked. The law has been declared otherwise by the Supreme Court of the United States.

In Central Land Co. v. Laidley (159 U. S. l. c. 109), the Supreme Court, in passing upon a contention like that here made, said: "In order to come within the provision of the Constitution of the United States, which declares that no State shall pass any law impairing the obligation of contracts, not only must the obligation of a contract have been impaired, but it must have been impaired by some act of the legislative power of the State, and not by a decision of its judicial department only."

In Bacon v. Texas (163 U. S. l. c. 220), it was said of such a contention:

"The argument involves the claim that jurisdiction exists in this court to review a judgment of a State court on writ of error when such jurisdiction is based upon an alleged impairment of a contract by reason of the alteration by a State court of a construction theretofore given by it to such contract or to a particular statute or series of statutes in existence when the contract was entered into. Such a foundation for our jurisdiction does not exist. It has been held that where a State court has decided in a series of decisions that its legislature had the power to permit municipalities to issue bonds to pay their subscriptions to railroad companies, and such bonds had been issued accordingly, if in such event suit were brought on the bonds in a United States court, that court would not follow the decision of the State court rendered after the issuing of the bonds and holding that the legislature had no power to permit a municipality to issue them, and that they were

therefore void.   Such are the cases of Gelpcke v. City of Dubuque, 1 Wall. 175, an'd Douglas v. County of Pike, 101 U. S. 677.   In cases of that nature there is room for the principle laid down that the construction of a statute and admission as to its validity made by the highest court in the State prior to the issuing of any obligations based upon the statute, enters into and forms a part of the contract and will be given effect to by this court as against a subsequent change in decision by the State court by which such legislation might be held to be invalid.   But effect is given to it by this court only on appeal from a judgment of. a United States Court and not from that of a State court.   This court has no jurisdiction to review a judgment of a  State court made under precisely the same circumstances, although such State court thereby decided that the State legislation was void which it had prior thereto held to be valid.   It has no such jurisdiction, because of the absence of any legislation subsequent to the issuing of the bonds which had been given effect to by the State court.   In other words, we have no jurisdiction, because a State court changes its views in regard to the proper construction of its State statutes, although the effect of such judgment may be to impair the value of what the State court had before that held to be a valid contract.''

In Weber v. Rogan (188 U. S. l. c. 14), it was said: ''We agree with the Supreme Court of the State that no contract was created by this statute.   Hence, there was none to be impaired.   We had occasion to hold in Central Land Co. v. Laidley, 159 U. S. 103, that we have no jurisdiction of a writ of error to a State court upon the ground that the obligation of a contract has been impaired, when the validity of the statute under which the contract is made is admitted, and the only question is as to the construction of the statute by that court; and in the same case, as well as in Hanford v. Davies, 163 U. S. 273, we held that the constitutional

inhibition applies only to the legislative enactments of the State, and not to judicial decisions or to acts of State tribunals, or officers under statutes in force at the time of the making of the contract, the obligation of which is alleged to have been impaired.''

The question was thus summarily disposed of in National Mutual B. & L. Assn. v. Brahan (193 U. S. 1. c. 647): ''The Federal questions presented by the record are reducible to two, to-wit: ' (1) That the decision of the Supreme Court of Mississippi was in effect an impairment of the contract between the plaintiff in error and the defendant in error. (2) That full faith and credit were not given to the public acts, records and judicial proceedings of the State of New York.

''1. This contention is untenable. We said in Bacon v. Texas, 163 U. S. 207, 'Where the Federal question upon which the jurisdiction of this court is based grows out of an alleged impairment of the obligation of a contract, it is now definitely settled that the contract can only be impaired within the meaning of this clause in the Constitution, so as to give this court jurisdiction on a writ of error to a State court, by some subsequent statute of the State which has been upheld or effect given it by the State court. [Lehigh Water Co. v. Easton, 121 U. S. 388; New Orleans Water Works Co. v. Louisiana Sugar Refining Co., 125 U. S. 18; Central Land Co. v. Laidley, 159 U. S. 103, 109.]' In the case at bar there was no subsequent statute. There was a change in decision, it is contended, but against a change of decision merely, section 10, article 1, cannot be invoked.''

In Stanley County v. Coler, 190 U. S. 437, it was pointed out by the Supreme Court of the United States, that the rule above announced did not apply where the decision of the State court pertained to matters of commercial law or to general jurisprudence, but was limited to decisions of State courts construing State statutes.

The case at bar falls within the general rule and not within the exception stated in the last case cited.

There is, therefore, nothing in the contention of the plaintiff in this regard, and no guarantee of the Constitution of the United States requires this court to ignore its own decision and to follow a decision of an inferior court, which it has disapproved and overruled, or which it believes does not correctly state the law.

### III.

The plaintiff's third contention is, that the decision of this court in the Eddy case, supra, does not correctly state the law, and that neither section 1498, Revised Statutes 1889, nor the act of April 19th, 1893, requires that the council and mayor shall, by ordinance, levy and assess the cost of street improvements *after* the work is done, and that in this case the ordinance authorizing the work at the same time levied the taxes and directed the clerk to issue the special taxbills.

Section 3 of the ordinance authorizing the work directed the engineer to calculate the cost of the work, to ascertain the relation of the number of front feet to the total frontage abutting the improvement, and to return his calculation, in writing, to the city clerk, and then directed the city clerk, "on receipt of said calculations, *and upon approval of the city council of the work done,* to assess each block separately upon all lots or pieces of ground on either side of said street," etc. It is claimed that the law is satisfied by the passage of an ordinance of this character before the work is done.

The contention would avail the plaintiff nothing in this case even if it was true, for the ordinance did not confer the power upon the city clerk to levy and assess the special tax until he had received the calculations from the city engineer, nor until the city council had approved the work, and in this case the city clerk, under a resolution of the council, levied and assessed the spec-

ial tax before the work was approved or accepted by the city council. So that, in any event, these taxbills were not issued even in conformity to the ordinance. But there is a deeper and broader question involved in the contention. Section 1498, Revised Statutes 1889, relating to street improvements by cities of the third class, confers upon the council the power to cause such improvements to be made, and to contract therefor, and to levy the tax as therein provided. Section 1495 confers upon such cities the power to enact ordinances for the improvement of streets, etc.; and section 1496 provides that assessments for such purposes shall be known as special assessments for improvements, and shall be levied and collected as a special tax and a special taxbill shall be issued therefor, and shall be paid in the manner provided by ordinance.

The Act of 1893 confers upon cities of the third class the power to enact ordinances, *inter alia*, for the improvement of streets, etc.; requires the cost to be levied as a special assessment on the abutting property according to the front foot rule; and provides that such assessments shall be known as special assessments for improvements, and shall be levied and collected as a special tax, etc.; and section 109 of that act provides that the city council may, "by ordinance, include in the special assessment the cost of bringing to the established grade any street to be improved, when in its judgment or opinion, the general revenue fund of the city is not in a condition to warrant an expenditure therefrom for bringing the same to the established grade." And section 110 of the act is very similar to, if not identical with, section 1498, Revised Statutes 1889, in respect to the matters here in controversy, and provides that when the council shall deem it necessary to improve a street, it shall so declare by resolution, which shall be published in a city newspaper for two consecutive weeks, and if a majority of resident own-

ers of property liable to be taxed therefor shall not within ten days file with the city clerk their protest against said improvement, then "the council shall have power to cause such improvements to be made, and to contract therefor and to levy the taxes as herein provided."

From the foregoing provisions it is manifest that the power to order the improvement, to contract therefor, and to levy the taxes to pay for the same, is vested in the council, and that the council can only act with respect thereto by ordinance and not by resolution. As pointed out by this court in the Eddy case, this has been the uniform construction placed by this court upon similar municipal powers and charters ever since the decision in Ruggles v. Collier, 43 Mo. 359. The power being vested in the city council to be exercised by ordinance, it was not competent for the city council to delegate the power to levy and assess the cost of the street improvement to the city clerk. Neither is there any merit in the contention that such levy may be made before the work is contracted for by the ordinance authorizing the improvement to be made. Section 110 of the act of 1893, as also section 1498, Revised Statutes 1889, gives the council the power to cause the improvement to be made, to contract therefor, and to levy the tax for the payment thereof.

It is manifest that the ordinance authorizing the work to be done, which is required to be based only upon an estimate of the cost, could not levy and assess the special tax for the doing of the work, for the council would not at that time know what the cost of the work would be, and therefore could not apportion it by the original ordinance. Until the contract for the doing of the work was let, no one could know what the cost of the improvement would be. The statute clearly contemplates, therefore, that the city council shall authorize the doing of the work, shall enter into the con-

tract therefor, and shall afterwards levy the cost as a special tax. It has always been held that the work could not be authorized by a mere resolution of the council. It has also been held that the contract could not be entered into by a mere resolution. [Wheeler v. Poplar Bluff (149 Mo. 36).] And it was held in City of Nevada to use of Gilfillan v. Eddy (123 Mo. 546), that the city council could not delegate to the city clerk the power to levy and assess the cost and issue a special tax therefor, but that the city council must do so by ordinance and not by resolution. No good reason has been shown, and none suggests itself to the court, for changing the rules so announced, which have been uniformly enforced by this court since the subject first underwent adjudication by this court. Experience has proved the wisdom of strictly adhering to the principles so announced. And whilst hardships may result in sporadic cases from the rigid enforcement thereof, such experience has clearly demonstrated that the general welfare is best subserved by strictly construing municipal actions in such matters, and by requiring a faithful compliance with the rule and the spirit of the law.

The taxbills in this case were not issued in conformity to the requirements of the law, nor even with the ordinance itself.

The judgment of the circuit court is right and is affirmed.

All concur.