## POTTER, *Appellant*, v. DOUGLÀS COUNTY.

Constitutional Law : INDEBTEDNESS OF COUNTY. Section twelve of article ten of the constitution prohibiting any. "political corpora-·tion or subdivision of the state from becoming indebted in any manner, or for any purpose, to an amount exceeding in any year the income and revenue for such year, without the assent of two-thirds of the voters thereof. voting at an election to be held for that purpose," has no application to a debt incurred by a county for the· keeping and transporting of its prisoners by the sheriff or jailor of

another county, under the provisions of Revised Statutes, section 6090. (Distinguishing *Book v. Earl, post,* p. 246).

*Appeal from Douglas Circuit Court.*—HON. R. W. FYAN, Judge.

REVERSED.

*F. S. Heffernan* for appellant.

"No county * * * shall be allowed to become indebted in any manner, or for any purpose, to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the qualified voters thereof, voting at an election to be held for that purpose." Section twelve, article ten, of the constitution of the state of Missouri, simply means that the income and revenue for that year may be expended the same year, and the county may go in debt the same year to an amount not in excess of the income of that year. The defendant was liable to plaintiff. 1 Dillon on Mun. Corp. (2 Ed.) secs. 86, 88; note, sec. 89; *McCracken v. San Francisco,* 16 Cal. 632; *Weston v. Syracuse,* 14 N. Y. 110; 1 Dillon Mun. Corp. (2 Ed.) 478, secs. 384-5, and note p. 475, sec. 333. The plaintiff, as jailor, was compelled to receive the prisoners. Potter's Dwarris on Statutes and Constitution (Ed. 1885) pp. 654, 679.

*N. E. Ide* for respondent.

SHERWOOD, J.—Plaintiff brings this action to recover of defendant the sum of four hundred and fifty-nine dollars, on account of services performed by him as sheriff and jailor of Greene county, in keeping, boarding, clothing and taking to court certain prisoners committed to the jail of that county by the sheriff of defendant, under the provisions of section 6090, Revised Statutes. The bill of plaintiff for these services, though

approved by the circuit judge and prosecuting attorney, the county court of defendant, on its presentation, refused to pay or pass upon.

The case was tried on an.-agreed statement as follows :

" 1. It is agreed and admitted that the various counts as charged in plaintiff's petition, are just and true, and remain unpaid. 2. That at the time the fee bill, as charged in said petition, was presented to the county court, the revenue for said years was expended, and the same could not be paid without issuing warrants in excess of the income and revenue for said years. 3. It is agreed that the revenue derived in said county, under the existing laws, does not exceed twenty-five hundred dollars per year, and does not more than pay the expense for the first eight months of each year. Wherefore, the plaintiff and defendant submit this case on the above facts as the testimony in said cause."

Whereupon the court refused to declare the law to be in favor of plaintiff's recovery, and thus refusing, gave judgment for defendant.

The only point, then, for discussion, is the liability of defendant in such circumstances as already set forth. The section of the statute, to which reference has been made, makes it the duty of the sheriff or jailor of a county to receive prisoners from another county, where there is no jail, or an insufficient one, and safely keep them, subject to the orders of the judge of the court for the county whence such prisoners are brought. And sections 6091 and 6092, make it the duty of the sheriff or jailor where the prisoners are thus confined to have them before the circuit court of the county appointed for their trial, while section 6093 announces a penalty for failure thus to bring the prisoners before the proper court for trial, and renders such

sheriff, etc., liable to imprisonment for contempt, and also to a civil action for damages. And section 6095 permits such sheriff, etc., for such failure, etc., to be removed from office, and rendered incapable thereafter of holding the same.

These sections are to be considered in connection with section twelve of article ten of our constitution, providing that: "No county, city, town, township, school district, or other political corporation or subdivision of the state, shall be allowed to become indebted in any manner, or for any purpose, to an amount exceeding in any year the income and revenue provided for such year without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose." It is manifest, if that section of the constitution applies in cases of this sort, the predicament in which those counties are placed which have neither jails nor sufficient revenue is a most lamentable one, bereft, as they would be, of all means for the safe keeping of that dangerous class of persons whose violations of the law caused their arrest. And, in similar circumstances, the same view must hold, even if the provisions of section 6088, Revised Statutes, be resorted to, and a guard be employed in the county where the arrest occurs, for the like objections could be taken to the employment of such guard, thereby causing an indebtedness to accrue.

After carefully considering the subject, I am not of opinion that the constitutional prohibition should be ruled to apply in instances like the present. For this conclusion these are my reasons: I do not regard section twelve, *supra*, as applying here, because the effect of such construction would be destructive of the peace and good order in every county embraced within the provisions of section 6090 aforesaid; for it would be an impossibility to submit to a vote of the people of the county concerned, the question of an unascertained and unascertainable indebtedness to be incurred in the future, as the

exigencies of the case might demand. Who could foretell how many criminals would be arrested in the course of the ensuing year? If this could not be done, is it not glaringly obvious that no question as to the amount of the indebtedness could possibly be submitted to the people for the sanction of their suffrages? The maxim, *lex non cogit ad impossibilia*, may appositely be invoked in the present case; a maxim equally invocable whether the law be statutory or organic.

It is not to be intended that those who framed, or those who, by their vote, adopted our constitution, contemplated or sanctioned any such mischievous and destructive result. That constitution, as its preamble fittingly recites and declares, was established "for the better government of the state," and the idea is not to be tolerated that the framers and the adopters of that organic instrument would insert a clause therein which would, in many a county, destroy those restraints and those protections which the law, in its wisdom, has, with fostering care, thrown around peace-loving and law-abiding people, and turn them over, without let or hindrance, to the ravages and revenges of that class against whom its denunciations are leveled, and its penalties and punishments are commanded to be enforced. Such a construction, destroying, as it would, the very fundamental safe-guards and bulwarks of organized government and society, would be to attribute to the framers of the constitution a most palpable absurdity; and by an absurdity is meant that which is to be regarded as morally impossible, which is contrary to reason, or, in other words, which could not be attributed to men in their right senses. *State v. Hayes*, 81 Mo. 574; *Fusz v. Spaunhorst*, 67 Mo. 256, and cases cited; Smith's Com., secs. 486, 488, 518.

At the present term of the court, in the case of *Book v. Earl, post*, page 246, the section of the constitution under discussion was examined and held to apply to a

case where, without a vote of the people, a debt was incurred for making additions to a court house. But the ruling in that case supports the ruling in this one ; for there the amount of the indebtedness could be ascertained, and being ascertained, and being in excess of "the income and revenue provided for such year," it was properly ruled that "the assent of two-thirds of the qualified voters," etc., was a *sine qua non* to the validity of the indebtedness. But another reason also occurs why that section cannot apply in the case at bar. The inhibition of the constitution, it will be observed, is leveled against a county becoming indebted ; *i. e.*, through the ordinary channel, the action of the county court, the financial agent of the county. But here the indebtedness was not so incurred. It was created entirely independent of any action of the county court ; created by the sheriff of the county pursuant to the command of section 6090, *supra*. The law itself gave license to the incurring of such a debt ; it was incurred by operation of law, and the fact that the county would ultimately have the debt to pay cuts no figure in this discussion.

We reverse the judgment and remand the cause. All concur.