# THE STATE ex rel. AMERICAN MANUFACTURING COMPANY v. EDMOND KOELN, Collector of the Revenue, Appellant.

### In Banc, April 7, 1919.

1. **STATUTORY CONSTRUCTION: Absurd Law.** The presumption is that the General Assembly did not intend to enact an absurd law, incapable of being enforced.

2. **INCOME TAX ACT: Substitution of Word Collector for Assessor.** Section 32 of the Income Tax Act of 1917, which declares that any person who shall have paid a tax assessed against his real or personal property "during the year shall be permitted to exhibit a receipt thereof to the assessor" and shall have credit to the full amount paid to the State upon the income tax assessed against him, by the use of the word "assessor" meant "collector." The court will correct such verbal inaccuracy to read "collector," for otherwise the section would be absurd, contradictory of the other sections of the act and of the general statutes, and incapable of being enforced.

3. ———: **Credit: Taxes Paid During Year.** The tax receipts which the taxpayer is permitted by Section 32 of the Income Tax Act of 1917 to exhibit to the collector, are the receipts for property taxes becoming due and payable during the year in which the income tax for which he is to receive credit becomes due and payable.

4. ———: ———: **School Taxes.** The taxpayer in paying his income tax is entitled under the Act of 1917 to deduct only his property taxes paid "to the State." He is not entitled to credit for the school taxes paid by him.

5. ———: ———: ———: **Double Taxation.** A tax levied and collected for a school district is an entirely different burden from the tax levied and collected for State purposes, even though a part of the State taxes so collected is in fact afterwards distributed by the State to school districts to be used in helping maintain the public school system. Consequently an income tax levied for State purposes, under a statute which authorizes income taxes to be reduced only by the property taxes paid "to the State," does not amount to double taxation for school purposes.

6. ———: ———: ———: ———: **Public Purpose.** The fact that school taxes are levied for a public purpose, as are State and all other taxes, and that under the Constitution no taxes can be

levied except for public purposes, does not authorize the court to expand the words in the Income Tax Act, which authorizes a reduction of the income tax by the amount of property taxes paid "to the State," to include property taxes paid to a school district. *Held*, by GRAVES, J., concurring, that the Income Tax Act of 1917 is awkwardly and loosely drawn, and future legislation on the subject should have such clearness of expression as will remove all legal questions except the constitutional question, which as the act is now drawn is one of grave doubt.

Appeal from St. Louis City Circuit Court.—*Hon. Benjamin J. Klene*, Judge.

REVERSED AND REMANDED.

*Charles H. Daues* and *H. A. Hamilton* for appellant.

(1) The "tax" which may be deducted from the income tax assessment as provided for in Section 32 is the "tax assessed upon his real or personal property paid to the State," and this expression is equivalent to the expression of "State tax on property" as provided for in Sec. 8, Art. 10, Mo. Constitution. (2) School taxes are treated as a separate fund and are classified with county, city and town taxes by the Constitution, and cannot be deducted from the income tax assessment. Sec. 2, Art. 1, Mo. Constitution. (3) The state tax which may be deducted from the income tax is the tax paid to the State during the year in which the income tax is assessed against the person claiming the deduction. The taxes paid during 1918 alone may be deducted from the income tax assessed during the year 1918. (4) The collector is not authorized to make the deduction provided for in Section 32 until he has been authorized to change the amount of the bill or make a deduction therefrom by an order of the comptroller, who has him charged with the total amount of the income tax bills in his hands for collection, and until the comptroller has made the appropriate credit on his books reducing the amount of the income tax bills with which the collector is charged.

*Frank W. McAllister*, Attorney-General, *amiscus curiae.*

(1) The Supreme Court said in Bingham v. Birmingham, 103 Mo. 352: "The presumption is that the Legislature never intended to enact an absurd law incapable of being intelligibly enforced." It is manifest that it was the purpose and intention of the General Assembly that the income taxpayer should have the right to reduce the amount of the income tax assessed against him by the taxes he pays to the State on his real and personal property for the same year, and Section 32 was designed to enable him to accomplish that purpose. It is clear that the method intended was that he should exhibit his receipt or receipts for his real and personal property taxes to some officer authorized to give him the benefit of the credit in the payment of his income taxes. It is equally manifest, by reference to other provisions of the Income Tax Law and the general scheme and method of assessing and collecting real and personal property taxes, that requiring him to exhibit his receipt or receipts to the assessor utterly fails to accomplish the purpose and intention of the General Assembly. If the word "collector" had been used in Section 32 instead of the word "assessor," it would be an easy matter for the income taxpayer to exhibit his receipt for real and personal property taxes in payment of his income taxes, as the collector of real and personal property taxes is the collector of the income taxes and both are due and payable at the same time. It may be that the insertion of the word "assessor" instead of the word "collector" is a mere clerical error, or that the use of the word "assessor" instead of the word "collector" is a mere mistake or inadvertence. 36 Cyc. 1146. Judged by the other provisions of the Income Tax Act and the provisions of existing law called into play in the administration of the Income Tax Law by the terms of the act, the use of the word "assessor" in Section 32 instead of the word

"collector" must be presumed to have been either a mere clerical error or an inadvertence or mistake of the draftsman of the act, to which the General Assembly did not have its attention called. Under these circumstances, the court should read the statute as the General Assembly intended it to read, and so read it will express the real meaning and purpose of the General Assembly. Endlich on Interpretation of Statutes, Section 319; Lewis' Sutherland on Statutory Construction (2 Ed.), par. 410. We challenge the right of the relator to have credit on his income taxes for the two items "state school fund tax, $3,273," and "state tax for public school purposes, $1,789,326," for the reason that neither of these items are taxes paid to the State. It is evident from an examination of the statutes that the State levies no tax for the direct benefit of the schools. The only purposes for which taxes paid to the State are levied are for the general revenue fund, the payment of the interest on the School Fund and Seminary Fund certificates of indebtedness, and for the payment of the capitol building bonds and the interest thereon. It is evident that neither of the items mentioned were paid as taxes for any of these purposes, and, as the State does not levy and collect taxes for other purposes, the conclusion must be that neither of these amounts were paid to the State as taxes on the real and personal property of relator. The General Assembly was entirely logical in allowing credit on the income taxes only for taxes paid to the State. It was attempting to avoid what might seem to be double taxation, as the income tax is levied upon incomes derived from real and personal property, which also pays a property tax, but the proceeds of the income tax belong exclusively to the revenues of the State and there would be no reason to reduce the amount of taxes payable to the State by taxes paid to counties, school districts or other subdivisions of the State for local purposes.

State ex rel. Mfg. Co. v. Koeln.

*Barclay & Wallace* for respondent.

(1) The peremptory writ was correctly awarded to command allowance of the taxes paid in 1918 on the real and personal property of relator as credits on the income taxes assessed against relator "during said year" after exhibit of the receipts therefor to the assessor and collector under Section 32 of the Income Tax Law of 1917. Laws 1917, p. 538, sec. 32. (2) The "State School Fund tax" and the "State tax for public school purposes" (alleged in the petition to have been paid) are taxes paid "to the State," within the meaning of Section 32, as interpreted by the aid of the entire act. Laws 1917, pp. 526, 532, 534, secs. 5, 9. (3) Section 32 enacts that the credits specified shall be allowed in the payment of the income taxes assessed "during said year," and operates as an amendment of the prior law of taxation in Missouri. The exhibit of the paid tax bills to the assessor, and the separate record the latter is required (by Section 12) to keep, permit him to have a check upon the collector's accounts, with reference to such credits on income tax accounts, under Section 32. (4) State school taxes are within the scope and intent of Section 32 because such an interpretation of particular words of an enactment should be adopted if possible as will bring them into harmony with its general intent and produce reasonable and practical results, in harmony with other parts of the act. In re Ferguson Est., 206 Mo. 203; St. Louis v. Lane, 110 Mo. 254; Kane v. Railroad, 112 Mo. 34; State v. Slover, 126 Mo. 652; Railroad v. Gracy, 126 Mo. 472; Jones v. Driscoll, 94 Mo. 190 ("not" construed into a statute); Minor v. Bank, 1 Pet. 46 ("may" construed "must"); Felts v. Edwards, 204 S. W. 147. The other parts of the act (Sections 5 and 9) show that all taxes paid are excluded from income to be taxed, and from income tax to be assessed or paid, in view of the ruling on that point by the U. S. Supreme Court. Pollock v. Trust Co., 158 U. S. 618. (5) The

whole act helps to interpret Section 32 in allowing credits such as here claimed by relator "during said year" when the income tax bill is payable, and the intent to exclude all taxes from being considered income (on which income tax is payable) is manifest from several parts of this act. Laws, 1917, pp. 531-5, secs. 9, 11, 14; Laws 1917, p. 534, sec. 9. What a law implies is as much a part as that expressed. United States v. Hudson, 10 Wall. 395; Dooley v. Railway Co., 250 Fed. 143. (6) The State school taxes described in the petition are properly taxes paid "to the State" within the intent of this law, because: (a) They are alleged to be "State" taxes and the fact is not denied. R. S. 1909, sec. 1830. (b) They are in reality taxes paid "to the State" within the narrowest construction of Section 32, R. S. 1909, chap. 106; Laws 1917, p. 518, sec. 11031; Constitution, art. 11, secs. 1-7-11; Constitution, art. 10, secs. 8-11; Railroad v. Price County, 133 U. S. 496; State v. Henderson, 160 Mo. 190; Railroad v. Chapin, 162 Mo. 414; State v. Phipps, 148 Mo. 31.

WILLIAMS, J.—The American Manufacturing Company, a corporation, seeks by mandamus to compel the Collector of the Revenue of the City of St. Louis to allow certain credits upon said corporation's income tax bill.

The suit was originally instituted in the Circuit Court of the City of St. Louis. Upon a trial in the circuit court a peremptory writ of mandamus was awarded, commanding said collector to allow the credits claimed by the corporation in its petition. The collector duly appealed to this court, and will hereinafter be referred to as appellant. The corporation will hereinafter be referred to as respondent. The facts necessary to an understanding of the issues are undisputed and may be summarized as follows:

Respondent is a foreign business corporation, duly licensed to do business in this State, and is located in

the City of St. Louis. Appellant is the Collector of the Revenue of the City of St. Louis. During the year 1918, the respondent corporation made due return of its taxable income for taxation by the State, to the assessor of said city, pursuant to the terms of the Income Tax Act, Laws 1917, pp. 524 et seq.

Thereupon the assessor duly made an assessment of income taxes against said corporation, for which an income tax bill was later issued and placed in the hands of appellant as collector of said city. The income tax bill by its terms was due and payable on or before December 31, 1918, without penalty. During the year 1918 the respondent paid taxes which became due and payable in said year as follows, to-wit:

Manufacturer's tax on its material, machinery, etc., under the provisions of Art. XVI and Art. XV. of Chap. 117, Revised Statutes 1909:

Paid Aug. 1, 1918,

| | |
|---|---|
| State Property Tax | $818.25. |
| State Interest Tax | 54.55. |
| State Capitol Building Fund Tax | 109.10. |
| School Fund Tax | 3,273.00. |

Also taxes which became due and payable in said year on real and personal property other than above: Paid Dec. 3, 1918,

| | |
|---|---|
| General State Revenue Interest and Capitol Fund Tax | $511.23. |
| Tax for public school purposes | 1,789.32. |

After the payment of the above taxes and on December 3, 1918, the respondent, in an attempt to comply with Section 32 of the Income Tax Act (See Laws 1917, page 538), exhibited the paid tax receipts for all the above taxes to the Assessor of the City of St. Louis, to the Comptroller of the City of St. Louis, and to appellant as collector of said city and requested each of them that respondent be allowed credit on its said income tax bill to the full amount of said tax receipts.

Each of the three officials refused to allow said credits and this proceeding was instituted against the collector.

The determination of the questions presented by this appeal involves the construction of the Income Tax Act and more especially Section 32 thereof, which is as follows:

"Sec. 32. *Taxes paid on real and personal property to be deducted, etc. when.*—Any person, corporation, joint-stock company, association or insurance company who shall have paid a tax assessed upon his real or personal property to the State during any year shall be permitted to exhibit the receipt or receipts thereof to the assessor to the full amount in the payment of income taxes assessed against such person, corporation, joint-stock company, association or insurance company during said year."

More specifically stated there are but two questions presented, which questions, stripped of unnecessary verbiage, are as follows:

1. Should the word "assessor" in said section be construed to read "collector"?

2. Does the phrase, "who shall have paid a tax assessed upon his real or personal property *to the State*" as used in said section include the taxes which respondent paid for school purposes?

These will be discussed in their order.

I. Should the word "assessor" in Section 32 of said Act (Laws 1917, p. 538) be construed to read "collector"?

In ascertaining the legislative intent in this regard it will be helpful to call attention to other provisions of the act as well as some of the general revenue laws.

Section 11 of the Income Tax Act provides that "every person who has a taxable income shall on the first day of January of each year, or as soon thereafter as practicable, apply in person or by mail, to the assessor of the

Verbal
Inaccuracies.

district in which such person resides, for a proper blank on which to make a return, which said return shall be filed with the assessor on or before the first day of March next following.''

Section 14 of the act provides that ''the assessor shall complete the assessment of incomes on or before the first day of March of each year and shall thereupon forthwith certify the result to the county clerk or city auditor who shall compute the taxes thereon, and said clerk shall enter such 'income tax' upon the tax books of the year and it shall be collected and paid as personal property taxes are now collected and paid.''

Section 22 of the act provides that ''income taxes shall become delinquent on the first day of January following the day when said bills are placed in the hands of the collector.''

From the foregoing it appears that after March 1st of each year the assessor has nothing further to do with the income tax theretofore assessed by him except to forthwith certify such assessment to the proper authorities.

Under the general law (Chap. 117, R. S. 1909) pertaining to the assessment and collection of taxes due and payable in any given year on real and personal property, the tax books are not required to be delivered into the hands of the collector until long after March 1st of each year, the date upon which the assessor is required to forthwith certify his income tax assessment lists to the proper officials.

It is therefore evident that a person or corporation against whom an income tax is assessed in any given year could not possibly procure a tax receipt for his real and personal taxes due and payable in that year in time to exhibit the same to the assessor before the assessor's duties in connection with such assessed income tax had entirely terminated.

To whom did the General Assembly intend such tax receipts should be exhibited? To the collector, who

from the time such tax receipts could first possibly come into existence, was the only official authorized by law to collect such income taxes, or to the assessor, who at such time had nothing further whatever to do with the asessment or the collection of. said income taxes?

The act says that the receipts shall be exhibited to the full amount, not for the purpose of affecting the assessment of the income tax, but *"in the payment of income taxes."*

The payment of the income tax is required to be made to the collector and not to the assessor.

To hold that the General Assembly intended that the tax receipts should be exhibited to the assessor would be to hold that it "intended to enact an absurd law incapable of being intelligently enforced." The presumption is that the General Assembly did not intend to enact an absurd law. [Bingham v. Birmingham, 103 Mo. 234, l. c. 352.]

When the entire act is read and considered in the light of the entire scheme of revenue assessment and collection we are satisfied that it was the intention of the General Assembly that such receipts should be exhibited to the collector whose duty it is to collect the income tax and that the word "assessor" in Section 32 of the act is the result of a clerical error and should be construed to read "collector," in harmony with the true legislative intent.

The correct rule here applicable is stated in 36 Cyc. 1126 as follows:

"Mere verbal inaccuracies, or clerical errors in statutes in the use of words, or numbers, or in grammar, spelling, or punctuation, will be corrected by the court whenever necessary to carry out the intention of the Legislature as gathered from the entire act."

To the same effect are the following authorities: Endlich on Interpretation of Statutes, par. 319 and numerous cases therein cited; 2 Lewis-Sutherland on Statutory Construction (2 Ed.), par. 410 and cases

therein cited; Frazier et al. v. Gibson, 7 Mo. 271 (wherein the word "judgment" was construed to read "assignment"); Ellis v. Whitlock, 10 Mo. 781 (wherein the word "section" was construed to read "sections").

II.   The next question presented is, what tax receipts are permitted by said Section 32 to be exhibited in the payment of income taxes?

All the parties to this record and also the learned Attorney-General, appearing *amicus curiae* by leave of court, concede that it must be receipts for taxes which become due and payable during the same year in which the income tax in question also becomes due and payable. In this we think the parties are correct.

School Taxes.

The appellant, and the learned Attorney General likewise, insist, however, that the circuit court erred in including in the peremptory writ the items showing receipts for the payment of school taxes.. These items include the school fund tax of $3,273 paid August 1, 1918, under the Manufacturer's Tax Law, and the tax for public school purposes in the sum of $1789.92 paid December 3, 1918, under the general revenue laws. No objection is raised concerning the other items which were all allowed by the trial court. Respondent contends that the court properly included the taxes paid for public school purposes.

The act provides that "any person . . . who shall have *paid* a tax assessed upon real or personal property *to the State* during any year shall be permitted to exhibit the receipt or receipts thereof to the "collector" (see construction given in paragraph one above) to the full amount in the payment of income taxes assessed against such person . . . during said year." It will be noticed that the act uses the phrase "paid . . . *to the State.*"

Under the law the only taxes on real and personal property which the State itself is permitted to levy and collect are as follows: (a) A tax of fifteen cents on each one hundred dollars' valuation for State revenue and

one cent on each one hundred dollars' valuation to pay the interest on the certificates of indebtedness of the State to the Public School Fund and the Seminary Fund (Laws 1915, p. 393); (b) A tax of two cents on the one hundred dollars' valuation for the payment of the interest and to create a sinking fund for the payment of the State Capitol building bonds. [Laws 1911, p. 416-417.]

The school taxes allowed by the trial court were not taxes paid to the State under levies made by the State for any of the above purposes, but evidently were taxes levied by and collected for the benefit of the local school district.

It is contended by the respondent that the provisions of Section 32 were inserted in the act to avoid a charge of "double taxation" being made against the tax. Whether or not that was the legislative purpose it is not necessary now to determine. But even, though such should be conceded to have been the purpose we are unable to see wherein the argument can be of use to respondent in the present case.

One of the elements of illegal double taxation is that "the subject of taxation shall directly contribute twice to the *same burden* while other subjects of taxation belonging to the same class are required to contribute but once." [Cooley on Taxation (3 Ed.), vol. 1, p. 394.] A tax levied and collected by and for a "school district" is entirely a different *burden* from the tax levied and collected for State purposes, even though a part of the State taxes so collected is in fact afterwards distributed by the State to school districts to be used in helping maintain the public school system. So even if the Legislature, by the provision, made an attempt to avoid double taxation it was not at all necessary to that end that school taxes (levied by local school authorities) should be allowed as an offset to any part of the income tax, levied and collected as a State tax.

Neither can the fact that a school tax is levied for a public purpose and one in which the State is greatly concerned be of any compelling force in adding words

which would enlarge the statute to the extent of including tax receipts for school taxes.

All taxes levied in this State whether levied by the State itself or by the school district, county or other taxing authority, must under the clear mandate of the Constitution (Art. 10, sec. 3, Mo. Constitution) be levied and collected for *"public purposes" only*. The State then may be said to be greatly concerned with each purpose for which a tax may under the Constitution be levied. But the intention clearly appears from the language of Section 32 of the Income Tax Act that a limit was intended to be placed upon the tax receipts which might be exhibited in payment of the income tax. The language used is that it must be a tax "paid to the State." The language is clear and unambiguous and we are unable to construe the language to include the tax receipts for school purposes which were exhibited by the respondent corporation in the case at bar.

We are of the opinion that the court erroneously included the school tax items, and that therefore the judgment should be reversed and the cause remanded.

It is so ordered.

All concur except WOODSON, J., who dissents; *Bond, C. J.,* and *Graves, J.,* each concur in separate opinion.

BOND, C. J. (concurring.)—Section thirty-two of the Income Tax Law was held in judgment by Court in Banc and adjudged to be in all respects a constitutional enactment. [Ludlow-Saylor Wire Co. v. Wollbrinck, 205 S. W. 196, l. c. 200.] It distinguishes a class of taxpayers who have already paid taxes to the State levied upon other property than income, from all other persons subject to income taxation. To persons belonging to the class thus created, whether natural or artificial, the section under review permits a deduction from the amount of income taxation otherwise payable by them, for whatever sums they may have paid to the State during the current year on other than income property. The section under review is part of the general law of

the State specifically taxing incomes and deals exclusively with the rights *inter sese* of the State and such taxpayers. It affords no basis for a reduction of the revenues derived thereunder by the State, by the allowance of a credit other than for a direct payment for the benefit of the general revenues of the State. The deduction claimed in the case at bar for the amount of taxes paid by relator to the school fund is, therefore, not within either the letter or the spirit of the section of the Income Tax Law under review (Laws 1917, p. 538, sec. 32) and the ruling of the main opinion on that point is clearly correct, as is also its holding that the term "assessor" was used in the section in the sense of "collector;" for one man is often both. This conclusion cannot be escaped in the light of the context and the terms employed in the section, the sequence of the duties performable by an assessor and a collector, and the obvious object of the act. It is the duty of the courts not to permit the intendment of a valid enactment to perish by a slip of the pen on the part of the copyist of a bill, or a verbal inadvertence of the draughtsman.

For these reasons I concur in the main opinion.

GRAVES, J. (concurring).—I feel constrained to concur in this opinion because our learned brother has given, as I think, the best construction that can be given, having in view the awkwardly drawn act (drawn prior to the meeting of the Legislature as current history goes) with which he had to deal. It is to be hoped that future legislation on the subject will be clearer. The whole scheme is an exceedingly close legal question under our Constitution. The idea that an "Income Tax" is, in fact and law, a tax on property, and therefore violative of our Constitution, rises before us as Banquo's ghost. Whilst we have held this illy drawn scheme constitutional (Ludlow-Saylor Wire Co. v. Wollbrinck, 205 S. W. 196) I joined in the majority opinion in that case with much trepidation and doubt. So that, as above stated, it is hoped that the future legislation

upon this subject when it reaches us (as it no doubt will) will have such clearness of expression as will exclude all legal question except the constitutional question.