CORRINE E. HANNA, Appellant, v. AETNA LIFE INSURANCE COMPANY, Respondent.

In the Kansas City Court of Appeals, May 26, 1924.

1. **INSURANCE: Policy of Life Insurance Held Governed by Laws of the State in Which it was Made and Delivered.** Life insurance policy made and delivered in the State of Kansas *held* governed by the laws of that State.

Hanna v. Aetna Life Ins. Co.

2. ———: Cancellation: Cancellation of Life Insurance Policy for Non-payment of Premium, Without Written Notice to Holder as Required by Laws of Kansas, Held Void. Section 40-332, Revised Statutes, Kans. Ann. 1923, forbids forfeiture or cancellation of life insurance policy for non-payment of premium, without first giving written notice to holder, and where no such notice was given, attempted cancellation was void.

3. EVIDENCE: Truth of Plaintiff's Evidence Held for Jury. Whether plaintiff's evidence as to alleged conversation with insurer's state manager is to be accepted as true, held for jury.

4. INSURANCE: Statement of Insured to Agent of Insurer as to Change of Address Held not Notice of Insured's Engagement in Foreign Military Service. Statement of insured to insurer's State manager that he expected to go overseas in the future, and that he would be "leaving shortly," and desired all notices as to policy or premiums sent to him in care of his wife, who was his beneficiary, at her address, held not notice of insured's engaging "in military service outside United States," as required by policy.

5. ———: Where Insurer Did not Receive Any Notice of Insured's Actual Entrance upon Foreign Military Service, but Only of His Expectation so to do, It Did not Waive Its Right to Extra Premium. Insurer not having received any notice of insured's actual entrance upon foreign military service, held not to have waived its right to extra premium, because it had knowledge that insured was expecting to, or would, enter upon such service in the future.

6. ———: Waiver: Estoppel: No Waiver in Absence of Knowledge of That Which is the Subject of Waiver. There can be no waiver in the absence of knowledge of that which is the subject of waiver.

7. ———: Provision of Policy Calling for Notice of Insured's Entrance into Foreign Military Service, and Requiring Additional Premium in That Event, Held Valid and Enforceable. Provision of policy calling for notice from insured of his entrance into foreign military service, and requiring the payment of an additional premium in that event is valid and enforceable.

8. ———: Notice: Beneficiary Held not Absolved from Effect of Failure to Notify Insurer of Insured's Entrance upon Foreign Military Service, and to Pay Extra Premium by Statutes Forbidding Cancellation for Non-payment of Premium without Written Notice. Sections 40-332, 40-333, Revised Statutes, Kans. Ann. 1923, forbidding cancellation of life insurance policy for non-payment of premium, without giving written notice to holder of policy, does not absolve beneficiary from the effect of the failure to notify insurer of insured's

entrance upon foreign military service, and of not paying the extra premium called for thereby, statutes with reference to such premiums as are specified in policy or at most to those which insurer knows have accrued to it.

9. **STATUTES: Construction: Not Construed so as to Require Impossibilities or to Lead to Absured Results, if capable of Any Other Reasonable Interpretation.** Statutes will not be construed so as to require impossibilities or to lead to absurd results, if they are at all capable of any other reasonable interpretation.

10. **APPEAL AND ERROR: Judgment Will not be Reversed to Enable Beneficiary to Ascertain Whether Insured Brought Himself Within Terms of Soldiers and Sailors Relief Act, so as to be Entitled to Benefits Thereof.** A judgment limiting recovery of beneficiary upon life policy to net reserve due at time of insured's death, as provided in policy, because of failure of insured to give notice of his entrance upon foreign military service, and to pay additional premium, will not be reversed to enable beneficiary to ascertain whether insured complied with Soldiers and Sailors Civil Relief Act, section 415, 40th U. S. Stats. at Large, 445, so as to be entitled to claim benefits of section 405.

*Headnotes 1. Insurance, 32 C. J., Section 6; 2. Life Insurance, 37 C. J., Sections 197, 258; 3. Trial, 38 Cyc., p. 1518; 4. Life Insurance, 37 C. J., Section 187; 5. Life Insurance, 37 C. J., Section 187; 6. Waiver, 40 Cyc., p. 259; 7. Life Insurance, 37 C. J., Section 187; 8. Life Insurance, 37 C. J., Section 187; 9. Statutes, 36 Cyc., pp. 1107, 1108, 1111, 1112; 10. Appeal and Error, 4 C. J., p. 1113, Section 3093.

Appeal from Jackson Circuit Court.—*Hon. James H. Austin,* Judge.

AFFIRMED.

*Reed, Boyle, Holmes & Taylor, John T. Barker* and *John H. Pollock* for appellant.

*J. C. Rosenberger, Dupuy G. Warrick* and *Rollin T. Talbert* for respondent.

TRIMBLE, P. J.—This is an action on a policy of life insurance made and delivered in the State of Kansas and therefore governed by the laws of that State. The policy is for $3000, dated July 23, 1917, on the life of Robert M. Hanna, payable to plaintiff upon insured's death. She is his widow.

At the close of the evidence the trial court, at defendant's request, peremptorily instructed the jury to return a verdict for plaintiff "in the sum of $39.21 and no more." (Said sum is the amount of the net reserve due on the policy at the time of insured's death.) The verdict thus directed was duly returned and, judgment being rendered thereon, plaintiff appealed.

The policy required the payment of semi-annual premiums of $41.22 each on the 23rd days of January and July of each year; and if any premium subsequent to the first one was not paid when due, the policy should cease, subject to certain values and privileges, which, in this instance, amounted to the net reserve on said policy, at the time of insured's death.

The policy also carried a "war rider" which provided that—

"If the insured shall . . . in any time of war within two years from the date hereof, engage . . . in any military service outside the continental limits of the United States of America, all provisions of this policy shall remain in force, provided that prior to such engagement, or within ten days thereafter, notice shall be given to the company by or on behalf of the insured, and an extra premium of five per cent of the sum insured under this policy shall be paid to this company or its authorized agent, and annually thereafter during its continuance . . . otherwise such service will render this policy—including not only the original insurance, but also the provision for extended insurance and paid up policy—null and void, except for the legal reserve then existing."

The Kansas statute (passed in 1913, now section 40-332, Revised Statutes Kans. Ann. 1923) forbids a life insurance company such as defendant to "forfeit or cancel any life insurance policy on account of the nonpayment of any premium thereon without first giving notice in writing to the holder of any such policy of its intention to forfeit or cancel the same." And the next

section (section 40-333, Revised Statutes Kans. Ann. 1923) provides that—

"Before any such cancellation or forfeiture can be made for the nonpayment of any such premium the insurance company shall notify the holder of any such policy that the premium thereon, stating the amount thereof, is due and unpaid, and of its intention to forfeit or cancel the same, and such policy holder shall have the right at any time within thirty days after such notice has been duly deposited in the postoffice, postage prepaid, and addressed to such policy holder to the address last known by such company, in which to pay such premium; and any attempt on the part of such insurance companv to cancel or forfeit any such policy without the notice herein provided for shall be null and void. The affidavit of any responsible officer, clerk or agent of the corporation, authorized to mail such notice, that the notice required by this section has been duly addressed and mailed by the corporation issuing such policy shall be prima-facie evidence that such notice has been duly given."

The execution and delivery of the policy is conceded, but the defense is that the company's liability is limited to the net amount of the legal reserve on said policy at the time of insured's death (admitted to be $39.21), for the following reasons:

1. Because insured, from June 4, 1918, to the day of his death, engaged in military service outside the continental limits of the United States, but failed to give notice thereof to the company. 2. Because he failed to pay the additional premium of five per cent called for in that contingency by the terms of the "war rider." 3. Because of his failure to pay the regular premium of $41.22 which became due on July 23, 1918, some three months and eighteen days before his death.

Plaintiff's contention is that defendant's attempted cancellation of said policy is void and of no effect because the statute of Kansas, which requires notice of intention to cancel, was not given; furthermore, that de-

fendant had notice of insured's impending military service outside the continental limits of the United States and no demand was made for an additional premium and the same was waived.

No doubt the Kansas statutes hereinabove quoted forbid the cancellation of a policy for nonpayment of premium, except upon the terms therein described. and, unless notice as therein required was given, such attempted cancellation, at least for failure to pay the regular premium, would amount to nothing. [Reynolds v. Metropolitan Life Ins. Co., 105 Kan. 669; Lightner v. Prudential Ins. Co., 97 Kan. 97; Priest v. Bankers Life Ass'n., 99 Kan. 295.]

The contention of the parties, and the basis upon which plaintiff seeks to meet the defenses interposed, will appear from the following statement of facts:

The application for the policy is dated July 7, 1917. At that time the United States was at war with Germany, and on that date applicant, Robert M. Hanna, was in the Military Service of the United States, as First Sergeant, R. O. T. C. The application stated that applicant was in the U. S. Military Service, then stationed at Fort Riley, Kansas. The application also gave plaintiff's name and street address in Kansas City, Missouri, as the one to be made beneficiary.

After setting forth that applicant was in the Army, the application stated that he contemplated no change in occupation but did contemplate going to a foreign country on "Military necessity."

The policy was delivered to insured at Fort Riley, Kansas. Thereafter, on August 15, 1917, he was made Captain of Company B., 356th Reg., 89th Division and assigned to duty at Camp Funston, the headquarters of said Division.

He remained there until on May 23, 1918, he went with the other units of said Division to the Atlantic seaboard from whence, on June 4, 1918, he embarked for France. It is conceded that up until May 23, 1918, his

address was "Captain Robert M. Hanna, Co. B., 356th Reg., Camp Funston, Kansas." On September 26, 1918, he was commissioned a Major in said regiment. On the day of the Armistice, November 11, 1918, he was killed in battle on the Western Front in France.

The premium of $41.22 due January 23, 1918, was duly paid; but the one due July 23, 1918, was not paid nor was the additional premium of five per cent paid as called for in the "War Rider" attached to the policy.

To show its compliance with the law of Kansas as to notice before cancelling a policy for nonpayment of the premium for July 23, 1918, the defendant offered in evidence the affidavit of its assistant cashier that on August 24, 1918, she deposited in the postoffice, postage prepaid, a letter, addressed to "Capt. R. M. Hanna, Co. B., 356th Infantry, Camp Funston, Kans.," stating that the premium due on the 23rd day of July, 1918, was unpaid and that unless same with interest amounting to eighteen cents was paid within thirty days from date, the policy would be cancelled except for the nonforfeitable privilege therein; that theretofore on June 25, 1918, a letter similarly addressed, stamped and mailed, had been sent notifying insured that the premium would be due on July 23, 1918.

The defendant then introduced in evidence the decisions of the Supreme Court of Kansas in Larue v. Kansas Mutual Life Ins. Co., 68 Kans. 539, and Bradshaw v. Farmers, etc., Life Ins. Co., 107 Kans. 681, to show that under the law of Kansas and the facts, with the giving of the above notice, the liability of the company was limited to the above amount of the net reserve of the policy.

After plaintiff's request for a directed verdict in her favor, was overruled, plaintiff introduced testimony to the effect that in May, 1918, she and insured met O. T. Cropper (defendant's State Manager, through whose office the policy was issued and who had charge of the issuance of notices to policy holders), on a train going

to Kansas City; that this meeting occurred about two weeks prior to insured's departure from Camp Funston for the Atlantic seaboard which was on the 23rd of May, 1918; that plaintiff's husband, the insured, introduced Cropper to plaintiff as "Mr. Cropper of the Aetna;" that, after talking with Mr. Cropper for a few moments, insured told Cropper he was "leaving shortly" and that he "might at any time be ordered overseas" and that he "wanted all notices or communications in relation to said policy or the premiums thereon, to be addressed and sent to him, until further notice, in care of plaintiff at her address, No. 2954 East 28th street, Kansas City, Missouri," and that the company had her address in its office among the papers (referring to her address given in the application), to all of which Cropper assented.

Cropper, a witness for defendant, denied that any such conversation or meeting ever took place or that he ever saw or knew insured.

On December 8, 1918, plaintiff wrote the Company that insured was killed in action November 11th, and the agreed statement of facts says that "Said letter was the first knowledge or notice received by defendant that said Hanna had gone to France, or that he had engaged in military service outside of the United States or that he had left Camp Funston."

The foregoing quotation from the agreed statement of facts, if taken by itself, would seem to be conclusive that the company had no notice that insured had left for military service beyond the continental limits of the United States; but the agreed statement of facts immediately goes on to further state plaintiff's claim with reference to the alleged conversation with Cropper on the train and that she "admits that no notice or information, verbal or written, was given to defendant of any change of said Hanna's address, unless this was done in the course of the alleged conversation with said Cropper, and admits that if said notice or information was not

given to defendant, in and by said alleged conversation, it was not given at all." And plaintiff's position, at least impliedly, seems to be that this last clause qualifies or modifies the other quoted clause as to notice, and that defendant's claim of lack of notice of insured's engagement in military service beyond the continental limits of the United States, is not *conceded* but depends upon whether plaintiff's evidence as to the alleged conversation with Cropper on the train is to be accepted as true, which last, of course, would be a question for the jury.

If the defense rested solely on a failure to pay the regular premium of July 23, 1918, perhaps plaintiff's contention that it all depends upon whether said conversation occurred, might be correct, for, if the conversation took place, it might be sufficient notice to the Company to send all future communications to the wife's address in Kansas City, and require notice of cancellation for failure to pay the premium to be sent there instead of to Camp Funston; and since notice was not sent to the Kansas City address, the statute requiring notice of cancellation, to be sent to insured's "last known" address was not complied with, and, in that event, the attempted cancellation for failure to pay the regular premium would be of no force or effect. It should be noted, however, that for the conversation to have even this effect, it would have to be construed as notifying Cropper that *from that moment* insured's address was to be regarded as in Kansas City, whereas, the agreed statement of facts and plaintiff's own evidence show that, for at least two weeks thereafter, insured's address was still at Camp Funston; and plaintiff's evidence is that in said conversation Cropper was told that insured expected to go overseas *in the future* or that he would be "leaving shortly," and therefore, a reasonable construction of insured's directions might be interpreted to mean that *when* he did go overseas, notices should be sent to his wife's address in Kansas City; and the contract provided that, if he did go, notice was to be given defendant of that fact.

But, without regard to any such construction of the conversation, the defense does not rest solely upon the failure to pay the regular premium of July 23, 1918. It also is based upon the failure to notify defendant of insured's entrance upon military service in foreign fields, and the failure to pay the increased premium called for on that account.

As to the effect of the alleged conversation upon this part of the defense, it should be observed that plaintiff's contention impliedly assumes that the notice of "change of address" given in said conversation, is synonymous with notice of insured's engaging "in military service outside the United States." But, manifestly, they are not the same.

Although the defendant, as well as the courts, may well be required to take notice of the fact that a state of war existed between the United States and Germany at that time, nevertheless the defendant should not be required to take notice of the particular field of an individual soldier's service. [Burke v. Miltenberger, 19 Wall. (U. S.) 519; United States v. Wilson, 7 Peters 150; 23 C. J., sec. 1910, p. 61; Perkins v. Rogers, 35 Ind. 124, 169.] Besides, the contract itself concedes this, since it expressly provides that notice of such foreign service must be given by or on behalf of insured to defendant.

Nor did the conversation with Cropper notify him or the defendant of insured's engagement in foreign service. Neither the application, nor the circumstances of insured's status as a soldier, nor the conversation afforded any notice of insured's actual entrance upon foreign service. At most, all they can be said to have done is to inform defendant that insured was expecting to do so *in the future.*

That, however, was the well understood situation when the contract was entered into, and yet the parties solemnly contracted that whenever insured did enter upon such foreign service, notice thereof by or on his behalf would be given defendant. Not having any notice of

insured's entrance thereon, how can it be said that defendant waived its right to the extra premium? Knowledge that insured was expecting to, or would, enter upon such service in the future, is not notice or knowledge that he has done so, nor can there be a waiver of a thing in the absence of knowledge of that which is the subject of waiver. [Rogers v. Home Ins. Co., 155 Mo. App. 276; Boyle v. United States, etc., Ins. Co., 250 S. W. 641; 32 C. J. 1325.]

The provision of the policy, set forth in the "War Rider" thereof, calling for notice from insured to defendant of the former's entrance into military service outside the continental limits of the United States, and requiring the payment of an additional premium in that event, is valid and enforceable. [Bradshaw v. Farmers, etc., Ins. Co., 107 Kan. 681; Larue v. Kansas Mut. Life Ins. Co., 68 Kan. 539; Reid v. American, etc., Assur. Co., 218 S. W. 957; Ruddock v. Detroit Life Ins. Co., 209 Mich. 638, 644.]

We agree with the trial court in holding that the hereinabove quoted Kansas statutes, as to notice before forfeiture or cancellation for "nonpayment of any premium thereon," do not absolve plaintiff from the effect of the failure to notify defendant of insured's entrance upon foreign military service and of not paying the extra premium called for thereby. Those statutes have reference to such premiums as are specified in the policy, or, at most, to those which the defendant knows have accrued to it. Evidently the statutes presuppose that the company has knowledge of its right to claim the premium, notice of the nonpayment of which the company is required to give. Any other construction would reduce the statutes to the absurdity of requiring a company to give notice of the nonpayment of something the company had no notice or knowledge it had a right to claim and that too in spite of the fact that the contract recognized that the company would not know of it and therefore provided that, if such foreign service did oc-

cur, insured would give defendant notice thereof. And the agreed statement of facts says that defendant had no notice nor knowledge of insured's having engaged in military service outside the United States, until after he had been killed therein. The rule is that statutes will not be construed so as to require impossibilities or to lead to absurd results, if they are at all capable of any other reasonable interpretation. [25 R. C. L. 1018-1020; Potter v. Douglas County, 87 Mo. 239; State ex rel. v. Koeln, 211 S. W. 31; Corrigan v. Kansas City, 211 Mo. 608, 650.] To hold that the aforesaid statutes apply without qualification to the payment of the extra premium even though the company was without notice or knowledge that such extra premium was due, would enable an insured to conceal from defendant the fact of his foreign military service and yet allow his beneficiary to recover although insured's obligation and agreement under the contract to notify defendant of such fact is just as binding as is his obligation to pay the extra premium, neither of which was done.

There is no merit in the contention that under the Soldiers and Sailors Relief Act of March 18, 1918, section 415, 40th U. S. Stats. at Large, 445, the policy could not be cancelled or the liability limited to the net reserve. There is no showing that insured ever brought himself within the terms of that Act by applying for its benefits as required by section 400 of said Act. Plaintiff knew sometime in December, 1918, that the company refused to pay on the grounds stated. The trial began nearly three years later, to-wit May 3, 1921, but no effort was made by plaintiff to show that insured had complied with said Act and it is conceded in plaintiff's brief that even now she does not know whether he did or not. Of course, a reversal of the judgment cannot be made in order that plaintiff may ascertain whether the insured brought himself within the purview and benefit of the Act.

The judgment must be, and is, affirmed. The other judges concur.